[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Morgan,* Slip Opinion No. 2017-Ohio-7565.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7565

THE STATE OF OHIO, APPELLEE, v. MORGAN, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Morgan,* Slip Opinion No. 2017-Ohio-7565.]

*Juvenile procedure—R.C. 2151.281—Juv.R. 4—Appointment of guardian ad litem—Juvenile court's error in failing to appoint a guardian ad litem during amenability hearing is subject to criminal plain-error standard of review—Juvenile is require to show that any error in failing to appoint a guardian ad litem affected the outcome of the proceeding.*

(No. 2015-0924—Submitted February 8, 2017—Decided September 13, 2017.)

APPEAL from the Court of Appeals for Franklin County, No. 13AP-620, 2014-Ohio-5661.

KENNEDY, J.

I. Introduction

{¶ 1} In this discretionary appeal, we consider whether the Tenth District Court of Appeals correctly held that a juvenile court's failure, during an amenability hearing, to appoint a guardian ad litem ("GAL") pursuant to R.C. 2151.281(A)(1)

and Juv.R. 4(B)(1) to protect the interests of a juvenile whose parents are deceased was not plain error.

{¶ 2} For the reasons that follow, we hold that when a juvenile whose parents are deceased appears at an amenability hearing, the juvenile is not required to ask for the appointment of a GAL; a GAL must be appointed as mandated by R.C. 2151.281(A)(1) and Juv.R. 4(B)(1). We further hold that the juvenile court's failure to appoint a GAL in a delinquency proceeding is subject to criminal plain-error review. However, because the evidence presented failed to prove that the error affected the outcome of the proceeding, we affirm the judgment of the court of appeals, albeit on different grounds.

II. Facts and Procedural History

{¶ 3} Appellant, Raymond Morgan, was 16 years old when he went on a two-day crime spree during which three victims were shot. The state filed three separate delinquency complaints against Morgan in the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch. The first complaint alleged that on February 8, 2012, Morgan and an accomplice committed a felonious assault against two separate victims, shooting one in the back and the second in the leg. The second complaint alleged that on February 9, 2012, Morgan committed aggravated robbery, robbery, felonious assault, and kidnapping. During this incident, Morgan was joined by two accomplices, one of whom was Morgan's brother. The victim was shot in the leg by one of the accomplices. The third complaint alleged that Morgan had received stolen property on February 8, 2012. The state moved to transfer all three cases to the general division of the court of common pleas for criminal prosecution.

{¶ 4} Morgan's father was deceased, but Morgan's mother was present at a preliminary hearing on March 5, 2012, when the state asked that a gun specification under R.C. 2941.145 be added to each count. On June 14, 2012, Morgan's mother attended a probable-cause hearing, at which the state requested a continuance. At

that hearing, Morgan's attorney informed the court that Morgan wanted him removed as his attorney. Morgan's attorney stated that Morgan was frustrated with the "pace of the case and being in the Detention Center." Morgan stated that he wanted his attorney discharged because the attorney was not trying to help him get home. The judge responded, "Because he's not gonna let you go home?" Morgan stated: "He's not trying to help me go home. It's—it's everybody story against mines (sic)." The judge then asked Morgan if he had anything to add. Morgan gave a nonverbal response. The judge then explained that Morgan's counsel was "one of the pretty good lawyers" and in the years that the attorney had appeared before the judge he had never acted less than zealously for his clients. The judge further explained that although there is a lot of process in this case, it inured to Morgan's benefit. The judge noted that he thought that Morgan was receiving adequate representation. Finally, the judge stated that appointing new counsel would require that counsel to get up to speed, which was contrary to Morgan's complaint that the process was too slow. The judge refused to dismiss Morgan's attorney and then continued the hearing as requested by the state.

{¶ 5} On August 9, 2012, Morgan's mother was again in attendance at the rescheduled probable-cause hearing. Morgan stipulated that there was probable cause that he had committed all the charged offenses. The judge ordered a social and mental-health examination of Morgan and scheduled an amenability hearing.

{¶ 6} On August 24, 2012, Barbra A. Bergman, Ph.D., conducted an evaluation of Morgan. Dr. Bergman interviewed Morgan's mother, who provided background information for the report. After that interview, Morgan's mother died.

{¶ 7} On October 24, 2012, the court held the amenability hearing. The state argued that based on the factors in R.C. 2152.12(D), Morgan should be bound over to the adult court because (1) three victims suffered physical harm and the fourth victim suffered economic harm, (2) Morgan committed the acts as part of a gang or organized criminal activity, that is, the offenses were committed in the same

general area with the same codefendants, (3) a firearm was used to facilitate these crimes and Morgan was at the least complicit in its use, (4) Morgan had prior offenses, one of which had been held open by the court, and (5) Morgan had a history of bad behavior in school. Moreover, the state argued that Morgan was emotionally, physically, and psychologically mature enough for transfer to adult court.

{¶ 8} Morgan's attorney opposed the bindover, citing the court-ordered psychological report of Dr. Bergman. Counsel argued that (1) Dr. Bergman's report indicated that Morgan had a high degree of amenability to rehabilitation in the juvenile-justice system, (2) no resources available in the juvenile-justice system had previously been used to rehabilitate Morgan because he had not had significant contact with that system, and (3) Morgan's propensity for future violence was low. Moreover, Morgan exhibited remorse for the criminal acts in which he had participated and had behaved himself while being held in detention.

{¶ 9} Morgan's counsel also informed the court of the recent death of Morgan's mother, but neither Morgan nor his counsel requested the appointment of a GAL. Counsel indicated to the court, however, that a godchild of Morgan's mother, who described herself as Morgan's godsister, was in the courtroom. Counsel stated that the woman had "taken over the role of mom since [the mother's] recent death."

{¶ 10} The judge stated that he had reviewed the amenability packet, which included a presentence-investigation report and the results of the social and mental-health examination. He also stated that he had weighed the factors for and against transfer, pursuant to R.C. 2152.12(D) and (E). The judge concluded that of the nine possible factors in favor of bindover listed in R.C. 2152.12(D), four existed in Morgan's case: three of the victims suffered significant physical harm, Morgan committed the offenses charged as part of an organized criminal activity, he had a firearm and used it in the commission of the offenses, and he was mature enough

to be bound over. The judge also found that *none* of the eight factors listed in R.C. 2152.12(E) weighing against transfer existed.

{¶ 11} Having significantly discounted Dr. Bergman's "conclusions and recommendation," the judge held that Morgan was *not* amenable to care and rehabilitation in the juvenile system and that for the "safety of the community," Morgan was to be transferred to adult court.

{¶ 12} In common pleas court, the state charged Morgan with 13 criminal counts, including one count of burglary, three counts of theft, three counts of felonious assault, one count of attempted aggravated burglary, one count of attempted aggravated robbery, one count of aggravated robbery, two counts of robbery, and one count of tampering with evidence. Each count included a firearm specification. Morgan pleaded guilty to one count of burglary, two counts of felonious assault, and one count of aggravated robbery, each including the firearm specification. The court imposed an 18-year aggregate prison sentence.

{¶ 13} On appeal to the Tenth District, Morgan raised the following assignment of error, among others: "The *juvenile court committed plain error* when it failed to appoint a guardian ad litem for Raymond Morgan's amenability hearing, in violation of Juv.R. 4(B)(1) and R.C. 2151.281(A)(1)." (Emphasis added.)

{¶ 14} The court of appeals held that the juvenile court erred in failing to appoint a GAL, but after concluding that the failure was not a rare, exceptional case in which it was not necessary to show prejudice, it held that Morgan was unable to demonstrate prejudice and thereby overruled Morgan's first assignment of error. 10th Dist. Franklin No. 13AP-620, 2014-Ohio-5661, ¶ 29. However, because the trial court did commit a sentencing error, the court of appeals reversed the trial court's judgment in part, affirmed Morgan's convictions, and remanded for resentencing. *Id.* at ¶ 62.

{¶ 15} We accepted two of four propositions of law asserted by Morgan for review: (1) a juvenile does not need to request a GAL in the absence of his parents,

guardian, or legal custodian at a juvenile-court hearing and (2) a juvenile does not need to show prejudice to support a reversal on appeal when the juvenile court fails to appoint a GAL when required by law.

{¶ 16} Morgan presents the court with alternative resolutions to his second proposition of law: if the court agrees with the appellate court that the plain-error standard of review applies, then the court must "presume prejudice" in the failure to appoint a GAL, but if the court finds that plain-error analysis does not apply, then a structural-error analysis must be used.

{¶ 17} The state argues that although Morgan's arguments are phrased as "alternatives," his arguments are one and the same. The state asserts that even if his arguments are alternative ones, they fail because "there is no such thing as a presumptively prejudicial error in plain error review" and the failure to appoint a GAL fails to "satisfy the strict criteria for structural error."

### III. Analysis

A.      Under R.C. 2151.281(A)(1), a Juvenile Is Not Required to Ask for the Appointment of a GAL

{¶ 18} Morgan presents this court with a very broad first proposition of law: "A child does not need to request a GAL *in the absence of his parents*, guardian, or legal custodian *at a juvenile court hearing*." (Emphasis added.) While we agree, based on the facts of this case and the statute at issue here, that Morgan was not required to ask for the appointment of a GAL, Morgan's proposition of law is stated more broadly than the command of the statute.

{¶ 19} R.C. 2151.281(A)(1) provides, "The court shall appoint a guardian ad litem * * * to protect the interest of a child in *any proceeding concerning an alleged or adjudicated delinquent child or unruly child* when * * * [t]he child has *no parent*, guardian, or legal custodian." (Emphasis added.) *See also* Juv.R. 4(B)(1).

**{¶ 20}** A court's main objective in statutory construction is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). To determine the intent of the General Assembly, we look primarily to the language of the statute itself. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973).

**{¶ 21}** "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 30, 278 N.E.2d 26 (1972), citing *Terteling Bros. v. Glander*, 151 Ohio St. 236, 241, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 275, 267 N.E.2d 781 (1971). Terms that are undefined by the legislature are accorded their common, everyday meaning. R.C. 1.42.

**{¶ 22}** "In statutory construction, * * * the word 'shall' shall be construed as *mandatory* unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage." (Emphasis added.) *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus.

**{¶ 23}** R.C. 2151.281 does not provide a "clear and unequivocal legislative intent" that the word "shall" should be construed as meaning something other than its ordinary meaning. Therefore, the legislature imposed a mandatory duty on the juvenile court to appoint a GAL for a juvenile when certain conditions are met.

**{¶ 24}** First, the General Assembly restricted the appointment of a GAL to proceedings concerning "an alleged or adjudicated delinquent child or unruly child." R.C. 2151.281. Second, the legislature restricted such an appointment to situations when the child has no parent, guardian, or legal custodian or there is a conflict between the child and the child's parent, guardian, or legal custodian. *Id.*

**{¶ 25}** As it is used in the statute, "no" means "not any." *Webster's Third New International Dictionary* 1532 (2002).

**{¶ 26}** The parties do not contest that an amenability hearing is a proceeding that concerns an alleged delinquent child. Moreover, they do not dispute that Morgan had no parent after the death of his mother.

**{¶ 27}** However, Morgan's proposition of law uses the phrase "at a juvenile court hearing" without any qualification as to the type of juvenile court hearing and substitutes the word "absence" for the word "no." "Absence," which is defined as the "state of being absent or missing from a place or from companionship," *Webster's Third New International Dictionary* 6 (2002), is not synonymous with the word "no."

**{¶ 28}** In construing the meaning of a statute, " 'we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording.' " *Dillon v. Farmers Ins. of Columbus, Inc.*, 145 Ohio St.3d 133, 2015-Ohio-5407, 47 N.E.3d 794, ¶ 17, quoting *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18. Therefore, based on these facts, the legislature mandates that a juvenile court appoint a GAL for a juvenile when the juvenile appears at an amenability hearing and the juvenile's parents are deceased and the juvenile has no guardian or legal custodian.

**{¶ 29}** The fact that Morgan's godsister appeared at the amenability hearing is of no consequence. While the General Assembly allows a guardian or legal custodian to stand in for a parent, and counsel indicated that the adult present had "taken over the role of mom since [Morgan's mother's] recent death," the juvenile court made no finding that the adult was Morgan's guardian or legal custodian. There was no evidence in the record that the godsister had been appointed by a court to serve as Morgan's guardian or legal custodian as defined in R.C.

2151.011(B)(11)[1] (as used in R.C. Chapter 2151, a "custodian" is a person who has legal custody of a child) or (17) (as used in R.C. Chapter 2151, a "guardian" is a person authorized by a probate court to exercise parental rights over a child).

{¶ 30} The General Assembly placed no burden on the juvenile to make the request. Therefore, in deciding Morgan's first proposition of law, we hold that a juvenile is not required to ask for the appointment of a GAL when the juvenile appears at an amenability hearing and has no parent.

B.    Criminal Plain-Error Standard of Review Applies

{¶ 31} Morgan asserts in his second proposition of law that he does not need to show that he was prejudiced by the juvenile court's failure to appoint a GAL. As discussed above, Morgan provides us with alternative resolutions. Therefore, if plain-error review applies, this court need not reach a decision on the second alternative resolution.

{¶ 32} Before squarely addressing Morgan's second proposition of law, we recognize that this court has never addressed the question whether plain-error review should be applied in juvenile-delinquency proceedings in the same manner that it is applied in criminal proceedings or in civil proceedings. Morgan acknowledges in his brief that "there are competing versions" of plain-error review: the civil version focuses on the "error's impact on the fairness of the proceedings; while [the criminal version] focuses on * * * whether the error impacts the outcome of the proceedings."

{¶ 33} Our research has revealed that the First, Fifth, Sixth, and Eighth District Courts of Appeals have exclusively cited the criminal plain-error standard of review in delinquency cases. *See, e.g., In re Jones*, 1st Dist. Hamilton Nos. C-090497, C-090498, and C-090499, 2010-Ohio-3994, ¶ 33; *In re Anderson*, 5th Dist. Tuscarawas No. 2001AP030021, 2002-Ohio-776, ¶ 14; *In re Jerry W.,* 6th Dist.

---

[1] R.C. 2151.011 was revised effective April 6, 2017. The subdivisions cited here were renumbered, but the language was not changed.

Erie No. E-98-042, 1999 WL 575823, *5 (Aug. 6, 1999); *In re A.F.*, 8th Dist. Cuyahoga No. 91251, 2008-Ohio-5479, ¶ 19. The remaining districts—the Second, Third, Fourth, Fifth, Seventh, Tenth, Eleventh, and Twelfth District Courts of Appeals—have most often cited the criminal plain-error standard of review but occasionally have also cited the civil plain-error standard of review. *See, e.g., In re Williams*, 116 Ohio App.3d 237, 241, 687 N.E.2d 507 (2d Dist.1997) (criminal); *In re Harper*, 2d Dist. Montgomery No. 19948, 2003-Ohio-6666, ¶ 7 (civil); *In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 31 (criminal); *In re Gibson*, 3d Dist. Allen No. 1-06-24, 2006-Ohio-5145, ¶ 9 (civil); *In re Lower*, 4th Dist. Highland No. 06CA31, 2007-Ohio-1735, ¶ 13 (criminal); *In re D.G.,* 4th Dist. Ross Nos. 13CA3382 and 13CA3383, 2014-Ohio-650, ¶ 21 (civil); *In re C.S.,* 7th Dist. Columbiana No. 09-CO-7, 2010-Ohio-867, ¶ 22 (criminal); *In re A.K.,* 7th Dist. Belmont No. 14 BE 54, 2016-Ohio-351, ¶ 9 (civil); *In re Lovejoy*, 9th Dist. Lorain No. 97CA006838, 1998 WL 114400, *3 (Mar. 4, 1998) (criminal); *In re Hall*, 9th Dist. Summit No. 20658, 2002-Ohio-1107, ¶ 14 (civil); *In re B.P.K.*, 10th Dist. Franklin No. 12AP-343, 2012-Ohio-6166, ¶ 15 (criminal); *Morgan*, 10th Dist. Franklin No. 13AP-620, 2014-Ohio-5661 (civil); *In re J.C.,* 2013-Ohio-2819, 994 N.E.2d 919, ¶ 10 (11th Dist.) (criminal); *In re L.P.R.*, 11th Dist. Lake No. 2010-L-144, 2012-Ohio-1671, ¶ 16 (civil); *In re Reynolds*, 12th Dist. Madison No. CA95-10-034, 1996 WL 379343, *4 (July 8, 1996) (criminal); and *In re Johnson*, 12th Dist. Butler Nos. CA2000-03-041 and CA2000-05-073, 2000 WL 1818546, *2 (Dec. 11, 2000) (civil).

**{¶ 34}** In this case, the appellate court applied the civil plain-error standard of review. However, both Morgan and the state refer to criminal plain-error standards when discussing the court of appeals' opinion. Even though neither of the parties directly raised the issue, we find that its resolution is necessary in this case. *See Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993) ("When an issue of law that was not

10

argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue").

### 1. History of plain error, generally

Prior to the adoption of Crim.R. 52(B), Ohio appellate courts would not consider "any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."

*State v. Wolery*, 46 Ohio St.2d 316, 326, 348 N.E.2d 351 (1976), quoting *State v. Gordon*, 28 Ohio St.2d 45, 50, 276 N.E.2d 243 (1971); *accord State v. Lancaster*, 25 Ohio St.2d 83, 267 N.E.2d 291 (1971), paragraph one of the syllabus; *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus.

Any other rule would relieve counsel from any duty or responsibility to the court, and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel, which enjoins upon counsel the duty to exercise diligence and to aid the court, rather than by silence mislead the court into commission of error.

*State v. Driscoll*, 106 Ohio St. 33, 39, 138 N.E. 376 (1922).

{¶ 35} However, the adoption of Crim.R. 52(B), which became effective July 1, 1973, altered that practice. *Wolery* at 327. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places

three limitations on a reviewing court's decision to correct an error" that was not preserved at trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). First, an error, "*i.e.* a deviation from a legal rule," must have occurred. *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the error complained of must be plain, that is, it must be "an 'obvious' defect in the trial proceedings." *Id.*, citing *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997). "Third, the error must have affected 'substantial rights.' We have interpreted this * * * to mean that the trial court's error must have affected the outcome of the trial." *Id.*

{¶ 36} Even when a defendant demonstrates that the factors under Crim.R. 52 exist, "we have 'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." ' " (Emphasis and brackets in *Rogers*.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23, quoting *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. However, Crim.R. 52(B) is a rule of *criminal* procedure.

{¶ 37} We declined to find plain error in *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 288, 291 N.E.2d 739 (1972), a civil case that predated the adoption of Crim.R. 52(B). Nine years after adopting the criminal rule of procedure, we again determined that plain error did not exist in a civil case in *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982). But in 1985, while recognizing that "the plain-error doctrine is a principle applied almost exclusively in criminal cases," we noted that this court had stated that it could apply to a civil case "if the error complained of 'would have a material adverse effect on the character and public confidence in judicial proceedings.' " *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985), quoting *Schade* at 209.

**{¶ 38}** Twelve years after *Reichert*, this court again considered the application of plain error in a civil matter in *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997). We recognized that " 'the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice.' " *Id.* at 121, quoting *Montalvo v. Lapez*, 77 Hawai'i 282, 305, 884 P.2d 345 (1994) (Nakayama, J., concurring in part and dissenting in part). A litigant who fails to follow procedural rules might forfeit his or her rights and "may not obtain a new trial based upon the bare assertion that his or her attorney was ineffective." *Id*. at 122.

**{¶ 39}** Nevertheless, this court reaffirmed the application of the plain-error doctrine in civil cases even though "no analogous provision exists in the Rules of *Civil* Procedure." (Emphasis sic.) *Goldfuss* at 121. However, application of the doctrine was strictly limited to those occasions when the error impugned the character and public image of the judicial process.

In appeals of civil cases, the plain error doctrine is *not favored* and may be *applied only* in the extremely rare case involving exceptional circumstances *where error*, to which no objection was made at the trial court, *seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself*.

(Emphasis added.) *Id.* at the syllabus.

**{¶ 40}** Therefore, in order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process, and therefore challenged the legitimacy of the

underlying judicial process. *Id.* As when they apply criminal plain-error review, reviewing courts applying civil plain-error review "must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice." *Id*. at 121.

2.      **Application of plain-error review in juvenile-delinquency proceedings**

{¶ 41} In 1962, this court recognized that juvenile proceedings were civil, not criminal, in nature. *Cope v. Campbell*, 175 Ohio St. 475, 196 N.E.2d 457 (1964), paragraph one of the syllabus. In *Cope*, a juvenile court adjudicated a minor delinquent for an act of malicious entry and committed him to the Ohio State Reformatory. "The Juvenile Court did not provide [the juvenile] with legal counsel; it did not advise him of his constitutional rights prior to the hearing; and it did not inform him that he could have an attorney to represent him if he so wished." *Id*. at 476. On appeal, the juvenile alleged that former R.C. 2151.35(E), which allowed a juvenile court, under certain conditions, to commit a delinquent juvenile to the reformatory "without an indictment or a jury trial," violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Id.* at 477. The court rejected this argument, concluding that "the whole import of the section implie[d] protection for the minor and not punishment." *Id.*

{¶ 42} However, not long after *Cope* was decided, the United States Supreme Court recognized that juveniles are entitled to certain constitutional protections in juvenile-delinquency proceedings. *See Kent v. United States*, 383 U.S. 541, 555, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) ("While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults"). In *Kent*, the court held that a hearing on a juvenile court's waiver of jurisdiction is a critically

14

important stage in juvenile proceedings, so the hearing must "measure up to the essentials of due process and fair treatment." *Id. at* 562. Since *Kent*, the Supreme Court has determined that juveniles should be afforded other protections afforded to adult criminal offenders. *See, e.g., In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile is entitled to notice of charges, assistance of counsel, the right against self-incrimination, the right of confrontation, and the right of cross-examination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (the state must prove its case against a juvenile beyond a reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (holding that a delinquency proceeding places a juvenile in jeopardy for purposes of the Double Jeopardy Clause).

**{¶ 43}** We have also recognized that "there are criminal aspects to juvenile court proceedings." *In re Anderson*, 92 Ohio St.3d 63, 66, 748 N.E.2d 67 (2001). For instance, we acknowledged in *Anderson* that the United States Supreme Court had specifically held in *Gault* that the privilege against self-incrimination, the notice of the charges, the assistance of counsel, and the rights of confrontation and cross-examination are to be afforded to juveniles. *Id*. We have also recognized that " 'civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts,' " because a proceeding in which the issue is whether a child is delinquent and subject to the loss of his liberty for years is comparable in seriousness to a felony prosecution. *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 22, quoting *Winship* at 365-366.

**{¶ 44}** "Just as we cannot ignore the criminal aspects inherent in juvenile proceedings for purposes of affording certain constitutional protections, we also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26, citing former R.C. 2151.02(A), now R.C. 2152.02(E)(1) (defining "delinquent child" as a child who commits an act that would be a crime if committed by an adult

{¶ 45} Responding to *Kent* and *Gault*, the General Assembly enacted former R.C. 2151.01, Am.Sub.H.B. No. 320, 133 Ohio Laws, Part II, 2040, as well as other changes in Ohio's juvenile laws, in 1969. *See* Willey, *Ohio's Post-Gault Juvenile Court Law*, 3 Akron L.Rev. 152 (1970). That statute mandated that the statutes in R.C. Chapter 2151 should be liberally construed to promote certain purposes. Those purposes included providing for the "care, protection, and mental and physical development of children" subject to the chapter, former R.C. 2151.01(A), 133 Ohio Laws, Part II, at 2041; protecting the public's interest in "removing the consequences of criminal behavior and the taint of criminality from children" and substituting "a program of supervision, care, and rehabilitation," former R.C. 2151.01(B), *id.*; accomplishing those goals by leaving the child in a "family environment" unless the child's "welfare or * * * the interests of public safety" required otherwise, former R.C. 2151.01(C), *id.*; and providing procedures that ensured a fair hearing and that juveniles' constitutional and other legal rights were recognized and enforced, former R.C. 2151.01(D), *id.*

{¶ 46} The General Assembly revised these statements regarding delinquency proceedings when it enacted R.C. 2152.01 in 2000. While the "overriding purposes" for delinquency dispositions continued to be for "the care, protection, and mental and physical development of children," the legislature amended the statute to acknowledge the additional purposes of protecting "the public interest and safety," of holding the delinquent accountable, and of restoring the victim and rehabilitating the delinquent. R.C. 2152.01(A). Dispositions imposed under the delinquency statutes are to be "reasonably calculated to achieve the overriding purposes" of R.C. 2152.01 but must also be "commensurate with and not demeaning to the seriousness of the * * * conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children." R.C. 2152.01(B).

16

**{¶ 47}** While we continue to characterize juvenile proceedings as civil rather than criminal in nature, *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 15, citing *Anderson*, 92 Ohio St.3d at 65, 748 N.E.2d 67, and *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 40, the criminal aspect of delinquency proceedings is undeniable.  To apply the plain-error doctrine in a juvenile-delinquency case only if an error "seriously affects the basic fairness, integrity, or public reputation of the judicial process," *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus, is inconsonant with the legislative purpose of R.C. 2152.01.

**{¶ 48}** Our jurisprudence requires that protections afforded adult criminal defendants, when appropriate, be extended to juveniles who stand in equal jeopardy of having their liberties taken.  The protection of individual liberty should never depend on an individual's ability to prove that the error affected the fairness of the whole judicial process in order to seek redress.  That is too great a burden to bear.  To hold otherwise erodes the "pragmatism and * * * understanding of [the] modern realities" of delinquency proceedings, which we have long recognized.  *In re C.S.* at ¶ 75.  Therefore, we are persuaded that the plain-error standard that we apply in criminal proceedings should apply when errors that are not preserved arise in juvenile-delinquency proceedings.

**{¶ 49}** We now turn our attention to Morgan's second proposition of law, asserting that there is no burden upon a juvenile to prove prejudice when a juvenile court fails to appoint a GAL as mandated by statute.  We disagree.

**{¶ 50}** In the past, we have been faced with the question whether this court would recognize a "presumed prejudicial" plain-error standard and we have declined to do so.  "We have never recognized the hybrid type of plain error * * * that is presumptively prejudicial and is reversible error per se." *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 24.  An expansion of Crim.R. 52(B), without justification, would upset the careful balancing of the need to

encourage trial participants to seek a fair and accurate trial the first time against an insistence that any obvious injustice be promptly redressed. *Id.* at ¶ 24. In the end, "our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23. There is nothing about the issue before us that compels us to deviate from these holdings and, therefore, we again decline to recognize a "presumed prejudicial" plain-error standard.

{¶ 51} There is no doubt that an obvious error occurred when the juvenile court failed to appoint a GAL for Morgan at the amenability hearing. However, showing that an error occurred is not enough. Morgan also has the burden to prove that the error affected the outcome of the proceeding, that is, that he would not have been bound over to the adult court.

{¶ 52} Morgan was represented by counsel at all stages of the bindover process. Counsel advocated against bindover by specifically directing the court's attention to the findings of Dr. Bergman's report. Morgan's mother was present at all the hearings, except the amenability hearing, and prior to her death she had participated in the completion of the social-background section of the court-ordered psychological examination. At the time of the amenability hearing, all that remained was an opportunity for a presentation of arguments for or against bindover and for the court to announce its judgment.

{¶ 53} As Morgan's counsel admitted at oral argument, some of the information a GAL would have provided at the amenability hearing might have been duplicative of what was already before the court. Morgan also speculates in his brief about how a GAL and counsel might give conflicting support to a juvenile: if a juvenile wanted bindover in hopes of receiving a community-control sanction in an adult court, counsel would be obligated to advocate for the juvenile's wishes, while the GAL would be free to argue that remaining in the juvenile court was in

the child's best interest. But speculation cannot prove prejudice. *St. Paul Mercury Ins. Co. v. Natl. Sur. Corp.,* N.D.W.Va. No. 1:14-cv-45, 2015 WL 222477, *6 (Jan. 14, 2015) (a party "must prove prejudice with specific facts and cannot rely on speculation"). This is particularly true here, when Morgan did not argue that counsel was ineffective for arguing against bindover and community-control sanctions would not have been available to Morgan because he was convicted of firearm specifications, which carried a mandatory term of incarceration.

{¶ 54} Our decision today should not be interpreted as diminishing the need for or the role of parents or GALs in delinquency proceedings. While the juvenile court should have appointed a GAL as the law mandates, and we caution juvenile courts to strictly adhere to the letter of the law, we cannot find that Morgan met his burden of proof that he was prejudiced by the juvenile court's error in not appointing a GAL on the facts of this case. Because criminal plain-error review applies to unpreserved errors that occur in a juvenile-delinquency proceeding, and because a showing of prejudice is required, we decline to address Morgan's alternative resolution to the second proposition of law.

## IV. Conclusion

{¶ 55} When a juvenile, whose parents are deceased, appears at an amenability hearing, the juvenile is not required to ask for the appointment of a GAL; a GAL must be appointed. R.C. 2151.281(A)(1) and Juv.R. 4(B)(1). A juvenile court errs when it fails to appoint a GAL when a juvenile appears at an amenability hearing with no parent. If the juvenile does not object, the error is subject to the criminal plain-error standard of review and the juvenile must show that the error affected the outcome of the proceeding. Because Morgan did not make this showing, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'DONNELL, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by FRENCH and O'NEILL, JJ.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 56} I agree with the majority that "a juvenile is not required to ask for the appointment of a [guardian ad litem ('GAL')] when the juvenile appears at an amenability hearing and has no parent." Majority opinion at ¶ 30. I also agree that "[t]here is no doubt that an obvious error occurred when the juvenile court failed to appoint a GAL for Morgan at the amenability hearing." Majority opinion at ¶ 51. But I disagree with the majority's application of the criminal plain-error standard of review for the purported protection of the juvenile offender when the result is to remove important protections. And it is particularly troubling that the majority uses this case, in which the parties have not raised the issue, *see* majority opinion at ¶ 34, to generally hold that "criminal plain-error review applies to unpreserved errors that occur in a juvenile-delinquency proceeding," majority opinion at ¶ 54.

{¶ 57} The majority claims that the criminal plain-error standard of review is appropriate in juvenile-delinquency cases because it would be "too great a burden" to meet the civil plain-error standard, which requires proof that "the error affected the fairness of the whole judicial process in order to seek redress." Majority opinion at ¶ 48. But the standard that the majority has imposed is unattainable.

{¶ 58} To meet the criminal plain-error standard here, the majority requires Morgan to prove a *specific* prejudice: that the outcome of the amenability hearing would have been different. The majority faults Morgan for speculating about the outcome if a court had approved a GAL, stating that "speculation cannot prove prejudice," majority opinion at ¶ 53, before concluding, based on its own speculation, that a GAL would not have changed the result of the hearing. This

approach sets the bar so high that it is difficult to imagine a successful plain-error challenge to a court's failure to appoint a GAL.

{¶ 59} In adult criminal proceedings, a plain error that affects substantial rights is reviewable by an appellate court if not objected to at trial. Crim.R. 52(B). And the majority is correct that we have interpreted "a plain error that affects substantial rights" to mean an error that affected the outcome of the trial. This standard is particularly appropriate in the typical plain-error scenario in which a criminal defendant seeks to challenge an evidentiary ruling or a jury issue that he or she did not object to at trial, and the court can readily evaluate whether the result of the proceeding would be the same if the error had not occurred. This approach also comports with the purpose behind the plain-error limitation; that is, it is a recognition of counsel's duty "to exercise diligence and to aid the court, rather than by silence mislead the court into commission of error." *State v. Driscoll*, 106 Ohio St. 33, 39, 138 N.E. 376 (1922).

{¶ 60} But this is not a situation in which counsel's (or Morgan's) silence misled the court. As the majority notes, the statute mandates that a GAL be appointed to protect a child without a parent regardless of whether a GAL is requested. And this is not a situation in which the alleged error relates to an evidentiary ruling or something affecting the jury deliberations, when the court can look to the other evidence in the case to determine whether the guilty verdict would have been otherwise.

{¶ 61} The GAL serves a specific role in the juvenile-delinquency proceeding: "to protect the interest of a child." R.C. 2151.281(A).[2] If that role is

---

[2] The child's attorney is tasked with representing the child's wishes, which may, but not always will, align with the child's best interest. *See* Sup.R. 48(D)(7). For this reason, the GAL's role is distinct from others in a juvenile-delinquency proceeding. The Rules of Superintendence for the Courts of Ohio recognize that a conflict may arise between the child's wishes and the child's best interest and describe a GAL's duties in more detail. Sup.R. 48(D). Those obligations include:

not filled as required by the General Assembly, we cannot presume that the court has considered the child's best interest. The failure to appoint a GAL is particularly troublesome in the amenability-hearing context, in which the juvenile-court judge must investigate the child's social history, education, family situation, "and any other factor bearing on whether the child is amenable to juvenile rehabilitation." R.C. 2152.12(C). Thus, whether the obvious error here affected Morgan's substantial rights deserves a different analysis than that applied in the adult criminal context, or even that applied in other aspects of a juvenile-delinquency proceeding not before us.

{¶ 62} The plain-error doctrine "is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." *United States v. Atkinson*, 297 U.S. 157, 159, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

---

(1) A guardian ad litem shall represent the best interest of the child for whom the guardian is appointed. Representation of best interest may be inconsistent with the wishes of the child whose interest the guardian ad litem represents.

* * *

(13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, * * * and conduct at least one interview with the child where none of these individuals is present;

* * *

(c) Ascertain the wishes of the child;

* * *

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

But those considerations weigh differently in the adult criminal context than in the context of a juvenile court's failure to appoint a GAL, like in this case, when the child offender has lost both parents, including one parent just prior to the amenability hearing at issue. In this context, asking the child offender to step into the role of the GAL to prove a different outcome offends considerations of fairness. Here, by being denied a GAL, Morgan has not had a fair opportunity to present all issues of fact in the amenability hearing.

{¶ 63} The United States Supreme Court has specifically declined to limit appellate review to only those plain errors that affect the outcome of the criminal case. *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Olano*, the court explained that "in *most* cases," the requirement that the plain error affect substantial rights "means that the error must have been prejudicial." (Emphasis added.) *Id.* at 734. But it noted:

> There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed. Nor need we address those errors that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice. Normally, *although perhaps not in every case*, the defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights" prong of [Fed.R.Civ.P.] 52(b).[3]

(Emphasis added.) *Id.* at 735.

---

[3] The Ohio plain-error rule mirrors the language in the federal rules. *Compare* Fed.R.Crim.P. 52(B) and Crim.R. 52(B). *See also State v. Long*, 53 Ohio St.2d 91, 96, 372 N.E.2d 804 (1978) (noting that the court has followed federal precedents in applying Crim.R. 52(B) since its adoption).

{¶ 64} In contrast to today's majority opinion, in an opinion concurring in judgment only in *In re D.S.*, 148 Ohio St.3d 390, 2016-Ohio-7369, 71 N.E.3d 223, the justice who authors today's decision would have applied a criminal plain-error standard of review to vacate the juvenile's admission of guilt "[b]ecause an admission in a juvenile-delinquency proceeding under Juv.R. 29 'is analogous to a guilty plea made by an adult.' " *Id.* at ¶ 28, quoting *In re Hall*, 9th Dist. Summit No. 20658, 2002-Ohio-1107. Without discussing the effect on the outcome of the case, that opinion concluded that the error was reversible "to prevent a manifest injustice" because there was a mutual mistake of law regarding whether the juvenile was entitled to credit for time already served in detention, a mistake that was material to whether he entered his admission of guilt knowingly, intelligently, and voluntarily. *Id.* at ¶ 40.

{¶ 65} Similarly, in this case, there was a mistake of law by the juvenile-court judge and both sides' counsel about the need for a GAL to be appointed. And a manifest injustice occurred: Morgan was denied his statutory right to have a GAL present to protect and act in his best interest. But here, the majority is willing to look past this manifest injustice to impose a higher standard: "Morgan also has the burden to prove that the error affected the outcome of the proceeding, that is, that he would not have been bound over to the adult court." Majority opinion at ¶ 51.

{¶ 66} This double standard is particularly troubling here because, unlike the similarity between a juvenile admission and an adult guilty plea, which the concurrence recognized in *D.S.*, there is no adult equivalent to an amenability hearing. It is purely a juvenile-court proceeding. And although the outcome of the proceeding has serious and adult-punitive consequences, it is an outcome left entirely to the juvenile-court judge's discretion after consideration of, among other things, whether the child is emotionally, physically, or psychologically mature enough for the transfer. R.C. 2152.12(D) and (E). It is impossible to know how a judge's discretionary considerations might be affected by hearing from a GAL

regarding the child offender's circumstance. As the appellate court recognized, "[W]e have no way of knowing what a guardian would have argued because one was not appointed." 2014-Ohio-5661, ¶ 25. In fact, neither does Morgan. Asking Morgan to prove otherwise raises serious fairness concerns.

**{¶ 67}** Indeed, juvenile proceedings are fundamentally different than adult criminal ones. Although it is true that there are criminal aspects of juvenile-delinquency proceedings, courts have consistently found juvenile-court proceedings to be "civil in nature" and extended criminal-law protections only when they act as just that—protections. *In re Anderson*, 92 Ohio St.3d 63, 66, 748 N.E.2d 67 (2001), citing *In re Gault*, 387 U.S. 1, 29-30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Accordingly, courts have determined that juveniles are entitled to certain constitutional safeguards, including procedures and rights guaranteed to adult criminal defendants. *See Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1996); *In re Winship*, 397 U.S. 358, 367-368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (applying reasonable-doubt standard to juvenile offenders); *Gault* at 41 (recognizing juveniles' right to counsel in certain juvenile proceedings); *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26 ("numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings"). Today's majority decision reinforces the criminal aspects of juvenile proceedings, not for the purpose of safeguarding a juvenile's constitutional rights, but to limit appellate review of juvenile proceedings. The exercise is misguided and ultimately, intended or not, serves to further limit the efficacy of the juvenile-justice system in rehabilitating child offenders.

**{¶ 68}** It is important to note that juvenile proceedings are still governed by Ohio's Rules of Juvenile Procedure, which contain no analogous provision to Crim.R. 52(B). In the context of civil litigation, which has no analogous provision to Crim.R. 52(B), we have recognized that the plain-error doctrine "may be applied

only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 69} Here, the "obvious error" recognized by the majority seriously affected the basic fairness, integrity, and public reputation of the judicial process when the juvenile court conducted the amenability hearing without a GAL. An amenability hearing "must measure up to the essentials of due process and fair treatment." *Kent* at 562. The General Assembly has, in enacting R.C. 2151.281, specifically recognized that children do not assume the burden of representing their own best interest. That is true whether the proceeding is a juvenile adjudication or a neglect or abuse determination.

{¶ 70} The juvenile system, as established by the General Assembly, does not require Morgan to advocate for himself. Thus, it is fundamentally unfair to demand that after losing both parents in short succession, Morgan not only have the maturity and legal shrewdness to request that a GAL be appointed, but then, on appeal, and without speculation, develop a post hoc record of what the GAL would have presented on his behalf. Because the juvenile court's failure to appoint a GAL was an obvious error that seriously affected the basic fairness, integrity, and reputation of the judicial process, I would vacate Morgan's conviction and remand the cause for the juvenile court to conduct a proper amenability hearing after the appointment of a GAL.

FRENCH and O'NEILL, JJ., concur in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Charlyn Bohland, Assistant Public Defender, for appellee.

_____