[Cite as *Tanner v. Umeh*, 2020-Ohio-3470.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara B. Tanner, | : | |
| Plaintiff-Appellee, | : | No. 19AP-794 |
| | | (C.P.C. No. 18JU-14071) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Nnamdi C. Umeh, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 25, 2020

**On brief:** *Kyle B. Keener* for the Franklin County Child Support Enforcement Agency as Attorney in Fact for Barbara B. Tanner, appellee.

**On brief:** *Nnamdi C. Umeh*, pro se.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BRUNNER, J.

{¶ 1} Defendant-appellant, Nnamdi C. Umeh, appeals from a decision overruling his objections to a magistrate order and registering a Swiss child support order for the purposes of enforcement in Ohio. Because Umeh failed to order or submit a transcript of the hearing before the magistrate to support his objections, we cannot review or sustain his factual claim that he did not sign documents acknowledging paternity and agreeing to pay child support. We overrule Umeh's assignment of error and affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 4, 2018, plaintiff-appellee, Barbara B. Tanner, caused a request for registration to be filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch pursuant to R.C. 3115.601 et seq. (Dec. 4, 2018 Registration Request.) In the request, Tanner alleged that Umeh, currently living in

Blacklick, Ohio, was the father of her child and had not made support payments obligated by a maintenance contract signed September 23, 2002. *Id.* at 1-3. Included with this request were the following documents:

> (1.) A power of attorney from Tanner designating the United States Office of Child Support Enforcement to act on her behalf to claim and collect maintenance due from Umeh. *Id.* at 7.
>
> (2.) An extract from record of birth for Tanner's daughter, born June 20, 2002 in Zurich, Switzerland recording Umeh as her father. *Id.* at 8-10.
>
> (3.) A certified copy of an agreement signed by Tanner and Umeh and countersigned by a clerk of the Jugendsekretariat from the district of Dielsdorf on September 23, 2002, in which Umeh acknowledged Tanner's daughter as his child and obligated himself to pay at least 500 Swiss Francs per month for her support (which amount was to be adjusted according to a formula incorporating the National Customer Price Index as calculated by the Swiss Federal Statistical Office). *Id.* at 16-17.
>
> (4.) A certified translation of the agreement. *Id.* at 12-15.
>
> (5.) A certified copy of an order of the Social Security Office from the municipality of Oberglatt issued on November 4, 2002 ordering Umeh to pay in accordance with the agreement he signed. *Id.* at 22-23.
>
> (6.) A certified translation of the order. *Id.* at 18-21.
>
> (7.) A stamped and signed calculation of arrears through October 1, 2018, showing that Umeh owed an arrearage of 100,390 Swiss Francs. *Id.* at 25-30.

{¶ 3} Two weeks later, on December 18, 2018, Umeh responded with a motion to dismiss. (Dec. 18, 2018 Mot. to Dismiss.) In the motion, Umeh argued that the agreement was a forgery and that, because Tanner had been involved with several sexual partners, he was not prepared to acknowledge paternity or his obligation to pay without a test. *Id.* at 1. Umeh also presented a number of convoluted allegations outlining an alleged conspiracy by members of The Church of Jesus Christ of Latter Day Saints that culminated in failed attempts to convert him. *Id.* at 1-3. These attempts, he explained, led him to retreat to

churches in the Anglican Communion, then to Judaism, and, as of the time of filing, had left him in a situation where he was engaged in healing himself "using natural ingredients to expel parasites [and] chemicals from his body system." *Id.* 2-3. Umeh alleged that these failed assaults on his faith and health and his subsequent rejoining of Judaism in 2017 were what motivated Tanner to file the child support case. *Id.* at 3.

{¶ 4} A magistrate of the trial court held a hearing on June 13, 2019 at which Umeh testified. (June 21, 2019 Mag. Decision at 2.) After hearing the testimony, the magistrate made the following findings:

> The Government of the Swiss Confederation (Switzerland) requests the Government of the United States to Register a Foreign Order (ROFO) for enforcement and collection. Respondent, Nnamdi C. Umeh, was served by certified mail on 15th December 2018 with a Notice to Non-Registering Party. Respondent filed a motion 18th December 2018 contesting the registration. The motion proceeded to hearing on 13th June 2019. The original paperwork from Switzerland included an Application, Power of Attorney, Extract from record of birth, Child Support Agreement, Municipality Oberglatt (official certification statement), and a Certified Calculation of payments and arrears. All documents submitted were either submitted in multi-language forms, or copies of forms were translated into English. The Magistrate found zero deficiencies as to the application and attached paperwork. FCCSEA Attorney Keener requested the Court take judicial notice of the registration packet. The Court grants Mr. Keener's request.
>
> Respondent stated in his motion that the Swiss parentage finding was invalid; however, the Court finds no evidence in support of his assertion. The Court is also required by statute to give full faith and credit to another jurisdiction's parentage finding. Respondent claimed that Petitioner was involved in the church of the Latter-Day Saints (LDS) in Switzerland back in 2002. Respondent stated the church was a cult, and that they poisoned him and gave him parasites. As a result, they lowered his I.Q., and he has been attempting to heal himself since. The church aka cult was working with the Swiss government to falsify and misrepresent the facts as to this case. The Court believes none of this. Respondent failed to assert any defenses to the registration pursuant to O.R.C. 3115.44. The Court dismisses his motion and orders the registration of the foreign order.

*Id.* The trial court simultaneously adopted the decision. *Id.* in passim.

{¶ 5}   Umeh objected on June 26, 2019.  (June 26, 2019 Objs.)  He argued that the magistrate did not accede to his request for paternity testing, that Tanner had not been present for the hearing, and that his signature on the document was a forgery.  *Id.* at 1. Umeh did not order or submit a transcript of the hearing in support of his objections.

{¶ 6}   On November 14, 2019, the trial court overruled Umeh's objections and readopted the decision of the magistrate.  (Nov. 14, 2019 Decision & Entry.)  The trial court noted that it was not in a position to review the magistrate's factual findings due to the lack of transcript.  *Id.* at 4-5.  It also concluded, having reviewed the file and evidentiary documents presented, that the magistrate committed neither an error of fact nor law when it concluded that Tanner was entitled to have the registration request granted.  *Id.* at 5-6.

{¶ 7}   Umeh now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 8}   Umeh presents a single assignment of error:

> The franklin court of common plea erred in allowing the child support order from Zurich, Switzerland to proceed forward for registration when the appellant signature on the child support order was obtained by fraud and based on that the issuing tribunal lacked personal jurisdiction over the party.

(Sic passim.)

## III.  DISCUSSION

{¶ 9}   Umeh argues that the "Swiss Child Support Agency lacked personal jurisdiction over the party."  (Umeh's Brief at 8.)  It is not entirely clear what Umeh means by this assertion but he also claims that he "was never at any point with Swiss child support agency and [Tanner] executing the child support order."  *Id.* at 9.  Essentially, this jurisdictional claim appears to be part and parcel of his allegation that his signature on the support agreement is a forgery as a component of some amorphous larger conspiracy involving the Mormon church.  *Id.* at 8-9.

{¶ 10}   In reviewing timely objections to a magistrate's decision, a court of original jurisdiction is to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Juv.R. 40(D)(4)(d).  However, "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact * * *, shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence

if a transcript is not available."  Juv.R. 40(D)(3)(b)(iii).  In this case, no transcript is in the record, and there is no indication that the transcript was unavailable in the relevant sense. *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 10.

{¶ 11}  As the Supreme Court of Ohio has explained in the context of Civ.R. 53 (the Ohio Civil Rules counterpart to Juv.R. 40):

> If a party fails to follow the procedures set forth in Civ.R. 53(D)(3)(b)(iii) for objecting to a magistrate's findings by failing to provide a transcript to the trial court when filing objections, that party waives any appeal as to those findings other than claims of plain error. Civ.R. 53(D)(3)(b)(iv). * * * In plain terms, the court of appeals cannot consider evidence that the trial court did not have when it made its decision. *Herbert v. Herbert*, 12th Dist. Butler No. CA2011-07-132, 2012-Ohio-2147, ¶ 13-15.

*State ex rel. Pallone v. Ohio Court of Claims*, 143 Ohio St.3d 493, 2015-Ohio-2003, ¶ 11; accord *Tucker v. Hines*, 10th Dist. No. 18AP-375, 2020-Ohio-1086, ¶ 8.  Thus, in reviewing the trial court's decision on Umeh's objections, we are essentially restricted to reviewing the case for pure issues of law and for plain error.  *Pallone* at ¶ 11; *see also Liggins* at ¶ 14, fn. 1.  "[I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process."  *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 40, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

{¶ 12}  In Ohio, a party "contesting the validity or enforcement of a registered support order or seeking to vacate the registration has the burden of proving one or more of the following defenses: * * * (2) The order was obtained by fraud."  R.C. 3115.607(A)(2). Contrary to the magistrate's observation that Umeh failed to "assert any defenses to the registration,"[1] Umeh's assertion that his signature was forged appears to at least allege a potentially cognizable defense.  (June 6, 2019 Objs. at 1; June 21, 2019 Mag. Decision at 2; Dec. 18, 2018 Mot. to Dismiss at 1.)

{¶ 13}  However, Umeh's claim that his signature was forged is fundamentally a factual claim about what happened or did not happen in Switzerland.  The magistrate

---

[1] The trial court recognized and essentially corrected this in its decision and entry adopting the magistrate's decision. (Nov. 14, 2019 Decision & Entry at 5.)

weighed his testimony against the documentary evidence and found his testimony not credible. (June 21, 2019 Mag. Decision at 2.) No transcript has been filed that would permit us to review that testimony. Moreover, a review of the documents that are in the record shows Umeh's signature on an agreement also signed by Tanner and countersigned by a clerk of the Jugendsekretariat from the district of Dielsdorf on September 23, 2002. By this document, Umeh acknowledged Tanner's daughter as his child and obligated himself to pay at least 500 Swiss Francs per month for her support. (Dec. 4, 2018 Request for Registration at 16-17.) Notwithstanding the trial court magistrate's misstatement about whether Umeh's allegations fit within one of the defense categories listed in R.C. 3115.607, there is no basis for reversing the trial court's adoption of the magistrate's order in this case.

{¶ 14} We overrule Umeh's sole assignment of error.

## IV. CONCLUSION

{¶ 15} Because Umeh did not order or submit to the trial court a transcript of the hearing before the magistrate to support his objections, the trial court could not effectively review Umeh's assertion that, contrary to the findings of the magistrate, the documents acknowledging paternity and agreeing to pay child support were forgeries. Consequently, as a reviewing court, we are in no better position than the trial court and cannot second-guess the factual determinations of the magistrate and thereby the trial court's decision to adopt such findings. Accordingly, Umeh's sole assignment of error asserting that he did not sign the relevant documents is overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch is affirmed.

*Judgment affirmed.*

BEATTY BLUNT, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

_____