[Cite as *State v. Powell*, 2021-Ohio-200.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 20CA3 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| Tyrone Q. Powell, III, | : | |
| Defendant-Appellant. | : | **RELEASED 1/26/2021** |

<u>APPEARANCES</u>:

Abigail Christopher and Lauren Hammersmith, Assistant State Public Defenders, Office of the Ohio Public Defender, Columbus, Ohio for appellant.

Jason Holdren, Gallia County Prosecutor, Jeremy Fisher and Randy Dupree, Gallia County Assistant Prosecutors, Gallipolis, Ohio, for appellee.

Hess, J.

{¶1}   Tyrone Q. Powell, III appeals his murder conviction and contends that the juvenile court abused its discretion when it refused to provide him with funding for an investigator to help his attorneys prepare for the probable cause hearing and erred as a matter of law when it denied his motion to suppress statements taken in violation of his constitutional rights. Powell also argues that he did not knowingly and intelligently waive his amenability hearing because he was not informed of the consequences of a transfer to common pleas court. He argues that he was deprived of his right to effective assistance of counsel because his attorney did not review all the evidence and properly investigate the case before the probable cause hearing. Last, Powell contends that the juvenile court

violated his due process rights when it found probable cause for aggravated murder, murder, and the gun specifications without credible evidence.

{¶2} We conclude that when Powell entered a guilty plea, he waived any alleged constitutional violations unrelated to the entry of the guilty plea and nonjurisdictional defects in the proceeding. Powell does not challenge his guilty plea and none of his assignments of error raise jurisdictional errors. Therefore, Powell has waived them. We overrule his assignments of error and affirm the trial court's judgment.

## I. PROCEDURAL HISTORY

{¶3} In May 2019, law enforcement filed a complaint in the Gallia County Common Pleas Court, Juvenile Court Division against 15-year-old Powell for the April 2019 shooting death of Powell's father, Tyrone Powell, II. The complaint contained one count of aggravated murder in violation of R.C. 2903.01(A), an unclassified felony if committed by an adult; one count of murder in violation of R.C. 2903.02(A) and one count of murder in violation of R.C. 2903.02(B), both unclassified felonies if committed by an adult; and two counts of aggravated robbery in violation of R.C. 2911.01(A)(3) and R.C. 2911.01(A)(1), both first degree felonies if committed by an adult. All counts contained firearm specifications under R.C. 2152.021. The juvenile court appointed two attorneys to represent Powell and he entered a plea denying the charges.

{¶4} The state filed a motion to transfer jurisdiction of the matter to the Gallia County Common Pleas Court, General Division pursuant to Juv.R. 30 and R.C. 2152.10(B) and R.C. 2152.12(B) for criminal prosecution as an adult. In support of the motion, the state alleged that the victim was Powell's father, who was killed by a gunshot

wound to the head while Powell was on probation for felony level juvenile offenses committed in Montgomery County, Ohio.

{¶5} At the first probable cause hearing Powell's attorneys requested and the court granted, a two-week continuance of the hearing to allow them time to review the discovery materials provided by the state. Shortly thereafter, Powell's attorneys sought a second, 45-day continuance of the probable cause hearing to allow them additional time to review the discovery. Powell's attorneys also filed four additional motions seeking: (1) that the juvenile court apply the Ohio Rules of Evidence to the probable cause hearing; (2) an order requiring the state to provide full discovery at the probable cause stage; (3) the appointment of a criminal investigator to assist counsel in effectively preparing for trial; and (4) to suppress all oral, written, videotaped, and audiotaped statements Powell made to investigators because they argued that Powell's constitutional right against self-incrimination was violated.

{¶6} The juvenile court granted Powell's second request for a continuance of the probable cause hearing and set the hearing date for July 25, 2019.

{¶7} Before the hearing commenced, the juvenile court addressed the pending motions. On the discovery motion, the juvenile court stated that the parties agreed that discovery demands had been met. Powell's attorneys agreed that they had "all of the vital information we need" even though "things will probably trickle in * * * but not pertinent to today's hearing." On the motion to suppress, the juvenile court ruled that it was premature at the probable cause stage, but it could be revisited in the future at the appropriate stage in the proceedings. On the motion for a criminal investigator to assist them, Powell's attorneys stated that they wanted the juvenile court to consider their request as it hears

the evidence at the probable cause hearing and as they move forward with the case.  The juvenile court found that the request for investigative assistance was premature at the probable cause stage, but agreed to look at the matter again at any future adjudication phase.  It does not appear from the record that the trial court addressed Powell's request that the Ohio Rules of Evidence be applied to the probable cause hearing. Thus, we presume the motion was denied.

{¶8}   Powell's attorneys did not request any additional continuances of the probable cause hearing or seek more time to review discovery. The juvenile court asked Powell's attorneys if they were ready to proceed with the hearing and they answered affirmatively.

{¶9}   At the hearing, Matthew White, a forensic scientist with the Ohio Bureau of Criminal Investigations (BCI), testified as a firearms and ballistic expert. White testified that he tested the Hi-Point model C9 9mm Luger semi-automatic pistol discovered during the investigation and determined that it was operable and that the bullet that was removed from the victim's body was fired from that firearm. White testified that the Hi-Point in question had two different types of safeties: a manual lever and a magazine safety. The magazine safety operates such that if the magazine is removed, the firearm will not fire.

{¶10} Jenny Comisford testified that she is a special agent with the special investigation unit of the BCI and the lead agent assisting the Gallipolis Police Department with the investigation of the death of Tyrone Powell, II.  Detective Comisford testified that she determined that Powell, his four siblings, and Teriana Strickland, an adult female, were present in the house when Tyrone Powell, II was shot.  Detective Comisford testified that she interviewed Powell and was present when other law enforcement officers

interviewed him. During the first three interviews Powell told investigators that he thought his father had a heart attack. In the fourth interview, after he was given his *Miranda* rights, Powell told investigators that he accidentally pulled the trigger of the firearm as his father placed it in his hand. Powell told investigators that his father had removed the firearm from a box, told Powell to get a towel so Powell could avoid touching the firearm, and then removed an empty magazine out of it before placing the firearm in Powell's hand. Powell stated that he accidentally pulled the trigger as his father placed the firearm in his hands, after which the gun dropped to the floor. Powell told investigators that he did not touch the gun again after it dropped to the floor. Powell's statement that the magazine had been removed before he accidentally shot his father was inconsistent with the firearm's magazine safety feature as described by White.

{¶11} Detective Comisford testified that she had the internet search history from Powell's cell phone that showed a number of searches about the Hi-Point model C9 firearm. When she asked Powell about the search history, Powell told her that some of the searches were made at his father's request and the results were shared with his father. Detective Comisford testified that the gun was collected a few days after the shooting and processed for DNA evidence. Powell's DNA was found on the trigger, the grip, the back slide, and the magazine. The victim's DNA was not found on those components. Detective Comisford testified that she questioned Teriana Strickland, who had been asleep next to the victim when he was shot. Strickland told investigators that she was asleep during the shooting and it did not awaken her. Strickland passed a subsequent polygraph test and was not considered a suspect.

**{¶12}** Detective Sgt. Justin Rice with the Gallipolis Police Department testified that he has advanced training in Cell Bridge cell phone extraction. Detective Rice testified that a Hi-Point model C9 9mm handgun was found by persons cleaning the residence on April 26, 2019, 11 days after the shooting. According to Detective Rice, two women were helping move items out of the residence and found the firearm when they pulled a dresser away from the wall in an upstairs bedroom. Detective Rice sent the firearm to be tested for DNA and for ballistics. Detective Rice testified about the extraction of internet search history data from Powell's cell phone. The state introduced a multipage exhibit of the cell phone extraction data. The results showed the Powell was researching whether the Hi-Point model C9 firearm could kill a person.

**{¶13}** On cross-examination, Detective Rice testified that a neighbor reportedly found blood-soiled towels and clothing in an outbuilding behind her house. However, Rice could not recall whether those items had been submitted to BCI for analysis. He testified that those items were still in the police evidence room.

**{¶14}** Powell presented no witnesses or evidence.

**{¶15}** The juvenile court found that the state met its burden to show probable cause only as to count one, aggravated murder, and count two, murder, and the related firearm specifications. However, the state did not meet its burden of proof as to counts three through five concerning murder while committing aggravated robbery and aggravated robbery.

**{¶16}** The juvenile court set a date for an amenability hearing. Prior to the start of the amenability hearing, Powell and his attorneys stated on the record that Powell was waiving his right to an amenability hearing. The juvenile court conducted a colloquy in

which Powell's attorney and the court questioned Powell to determine if the waiver was made voluntarily and knowingly.  Powell did not object to the waiver colloquy. The juvenile court issued a judgment entry finding that: (1) Powell knowingly and intelligently waived his right to an amenability hearing; (2) Powell underwent a psychological evaluation, which was admitted into evidence and considered by the juvenile court; and (3) it considered all the factors in R.C. 2152.12(D) and (E) (factors considered in determining whether to make a discretionary transfer) and determined that Powell was not amenable to care or rehabilitation within the juvenile system, and that the safety of the community may require that he be subject to adult sanctions.  The juvenile court identified the factors it found in favor of the transfer under R.C. 2152.12(D) and stated that there were no factors in R.C. 2152.12(E) weighing against the transfer. The juvenile court ordered Powell to be transferred to the general division of the common pleas court of Gallia County for criminal prosecution as an adult.  Powell did not object to the juvenile court's determination that his wavier was knowingly and intelligently made, the amenability findings, or the transfer order.

{¶17}  A bill of information was filed in the general division charging Powell with one count of murder in violation of R.C. 2903.02(A).  Powell pleaded guilty and he and the state made a jointly recommended sentence of an indefinite term of 15 years to life in prison. The trial court accepted and imposed the jointly recommended sentence.

{¶18}  Powell appealed.

## II. ASSIGNMENTS OF ERROR

{¶19}  Powell assigns the following errors for our review:

1. The trial court abused its discretion when it refused to provide Ty with funding for an investigator, in violation of his right to due process under

the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16, of the Ohio Constitution; *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1097, 84 L.Ed.2d 53 (1985); *State v. Mason*, 82 Ohio St.3d 144, 150, 694 N.E.2d 932 (1998). (7/25/2019 T.p. 40).

2. The juvenile court erred as a matter of law and violated Ty's right to due process when it summarily denied his motion to suppress statements taken in violation of his Fifth and Fourteenth Amendments. Juv.R. 30; R.C. 2152.12; Fifth and Fourteen Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution. (7/8/2019 Motion to Suppress; 7/25/2019 T.p. 36).

3. Ty did not knowingly and intelligently waive his amenability hearing because he was not informed of the consequences of his case being transferred to the common pleas court. Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution; *State v. D.W.,* 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 434, ¶ 35-40. (10/30/2019 T.pp. 135-140).

4. Tyrone Powell, III was deprived of his constitutional right to the effective assistance of counsel when counsel failed to review all evidence and properly investigate the case before the probable cause hearing. Sixth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution. (7/25/2019 T.p. 35; 10/30/2019 T.p. 140).

5. The juvenile court violated Ty's right to due process when it found probable cause for aggravated murder, murder, and the gun specifications in absence of credible evidence. R.C. 2152.12; Juv.R. 30(C); Fifth and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 16, Ohio Constitution. (A-1; 7/31/2019 Entry).


### III. LAW AND ANALYSIS

#### A. The Bindover Procedure & Guilty Plea

**{¶20}** Juvenile courts have jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult. R.C. 2151.23. However, R.C. 2152.10 and R.C. 2152.12 provide for a mandatory or discretionary transfer of the case to the court that would have jurisdiction over the offense if it had been committed by an adult, commonly referred to as a "bindover procedure." When the state

requests a discretionary transfer, the juvenile court must determine the age of the child, whether probable cause exists to believe that the juvenile committed the act charged, and whether the child is amenable to juvenile rehabilitation. R.C. 2152.12(B). Before considering a transfer, the juvenile court must order an investigation of the child's social history, education, family situation and other factors that might bear on whether the child is amenable to juvenile rehabilitation. R.C. 2152.12(C). In deciding whether to transfer the case, the juvenile court must consider factors listed in R.C. 2152.12(D) and (E) to determine whether the child "is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(3).

{¶21} To establish probable cause,

> the state must provide credible evidence that "raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." The juvenile court has the duty to assess the credibility of the evidence and to determine whether the state has presented credible evidence going to each element of the charged offense, but it is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the fact-finder at trial. (Citations omitted.)

*In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 10.

{¶22} A juvenile court "conducts a limited review of the evidence to 'evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause.'" *State v. Legg*, 2016-Ohio-801, 63 N.E.3d 424, ¶ 35 (4th Dist.), quoting *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001). However, the juvenile court may not "determine the merits of any competing, credible prosecution and defense theories" because this is a matter reserved for the factfinder at trial. *Id.*

**{¶23}** A probable cause hearing is a preliminary, non-adjudicatory proceeding as the court's function is not to determine guilt, but rather whether there is probable cause to believe the juvenile is guilty. *State v. Burns*, 8th Dist. Cuyahoga No. 108468, 2020-Ohio-3966, ¶ 74; *State v. Starling*, 2d Dist. Clark No. 2018-CA-34, 2019-Ohio-1478, ¶ 26. Because a probable cause hearing is non-adjudicatory, the evidence presented at the hearing does not need to meet the same standards as those for admissibility at trial. Confrontation clause standards for the admissibility of evidence and the Ohio Rules of Evidence do not apply to probable cause hearings, and evidence that might be suppressed on the basis of a *Miranda* violation is admissible during the hearing. *Burns* at ¶ 74; *Starling* at ¶ 27-28. "[S]tatutory and constitutional questions concerning the admissibility of evidence are premature and need not be addressed" at a juvenile probable cause hearing. *State v. Whisenant,* 127 Ohio App.3d 75, 85, 711 N.E.2d 1016 (11th Dist. 1998); *Burns* at ¶ 77 ("defense counsel's motion to suppress was not properly before the juvenile court at the time of the probable cause hearing"); *Starling* at ¶ 32 ("we find that filing a motion to suppress for the purposes of Starling's probable cause hearing would have been premature and improper").

**{¶24}** The issue of whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the act charged is a question of law; an appellate court applies a de novo review. *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 47, 51; *Legg* at ¶ 36. However, appellate courts defer to the juvenile court's "determinations regarding witness credibility." *Legg* at ¶ 26. In contrast, an amenability hearing is a broad assessment of individual circumstances and is inherently individualized and fact-based. Thus, a juvenile court's determination

regarding a child's amenability to rehabilitation in the juvenile system is reviewed by an appellate court under an abuse-of-discretion standard. *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 13-14.

**{¶25}** Here Powell was transferred to the general division of the common pleas court where he pleaded guilty.

> "The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). *See also State v. Shafer*, 4th Dist. Adams No. 17CA1047, 2018-Ohio-214, ¶ 21, quoting *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), fn. 2 ("a guilty plea constitutes 'an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case' "). A guilty plea " 'renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.' " *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Menna* at 62, fn. 2. Thus, a defendant who "voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *Id.*, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). "In other words, a voluntary, knowing, and intelligent guilty plea waives any alleged constitutional violations unrelated to the entry of the guilty plea and nonjurisdictional defects in the proceedings." *State v. Legg*, 2016-Ohio 801, 63 N.E.3d 424, ¶ 12 (4th Dist.), citing *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 105; *State v. Storms*, 4th Dist. Athens No. 05CA30, 2006-Ohio-3547, ¶ 9.

*State v. Martin*, 4th Dist. Pike No. 19CA900, 2020-Ohio-3216, ¶ 6.  A guilty plea also waives the right to assert ineffective assistance of counsel unless counsel's errors affected the knowing and voluntary nature of the plea. *Legg* at ¶ 61; *State v. E.T.,* 2019-Ohio-1204, 134 N.E.3d 741, ¶ 37 (10th Dist.). Therefore, Powell's guilty plea waives any alleged constitutional violations that occurred in the bindover proceeding and nonjurisdictional defects in the proceedings. *Legg* at ¶ 50.

{¶26} The issue of a court's subject matter jurisdiction cannot be waived. "[A]bsent a proper bindover procedure * * *, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent." *State v. Wilson,* 73 Ohio St.3d 40, 44-46, 652 N.E.2d 196 (1995). In *Wilson*, the juvenile was 17 years old at the time of his criminal activity and never appeared before the juvenile court, apparently because the state and the court mistakenly believed that he was 18 years of age when he committed the crime. He appeared before and was convicted and sentenced by the general division of the court of common pleas without any bindover proceeding or transfer order from the juvenile court.

{¶27} Not every error in a bindover proceeding is jurisdictional. *Smith v. May,* 159 Ohio St.3d 106, 2020-Ohio-61, 148 N.E.3d 542, ¶ 31 ("not every requirement [in R.C. 2152.12], even if mandatory, is jurisdictional in nature"); *State v. Quarterman*, 140 Ohio St.3d 513, 2014-Ohio-4034, 19 N.E.3d 900 (claims that mandatory bindover procedures violated due process and equal protection rights and the prohibition against cruel and unusual punishment were nonjurisdictional and were forfeited when they were not raised in the lower court); *State v. Morgan,* 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784 (juvenile court's failure to appoint guardian ad litem at the amenability hearing was nonjuridictional error, was forfeited, and was subject to a criminal plain error review); *State v. Martin,* 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, ¶ 25-27 (finding that the safe harbor law that requires the appointment of a guardian ad litem for certain human-trafficking victims charged with juvenile delinquency "are not jurisdictional requirements").

{¶28} In *Smith v. May,* the appellant sought a writ of habeas corpus on the ground that the adult court lacked jurisdiction over him because the juvenile court failed to comply

with a notice provision in the bindover statute. The Court ordered the parties to brief the question: "Does the procedural error in the juvenile-bindover proceeding create a jurisdictional defect that deprived the general division of the common pleas court of subject-matter jurisdiction?" The Court answered "no" and determined that the procedural error was not jurisdictional, the general division had jurisdiction over his criminal case, and it affirmed the appellate court's denial of the writ. In doing so, it overruled *Gaskins v. Shiplevy,* 74 Ohio St.3d 149, 656 N.E.2d 1282 (1995) ("*Gaskins I*") (Gaskins argued that his criminal conviction was void because the juvenile court failed to have him undergo mental and physical examinations that were statutorily required at the time; the transfer was flawed and the adult court lacked jurisdiction). "The *Gaskins I* court was wrong in adopting the broad rule that *any* deviation from the statutory bindover procedure renders the adult court's judgment void." (Emphasis sic.) *Smith v. May*, 159 Ohio St.3d 106, 2020-Ohio-61, 148 N.E.3d 542, ¶ 28, *reconsideration denied*, 158 Ohio St.3d 1437, 2020-Ohio-877, 141 N.E.3d 254.

> [W]e have held that key parts of the bindover procedure may be waived. And we have reviewed for plain error when a juvenile failed to object at a bindover hearing to a juvenile court's procedural error. These cases implicitly provide, contrary to *Gaskins I,* that noncompliance with a statutory bindover requirement does not prevent a juvenile court from transferring its jurisdiction over a case and does not render an adult court's judgment void. (Citations omitted.)

*May* at ¶ 18.

{¶29} The Court also noted that, while *Gaskin I* "had viewed all the requirements of the bindover procedure as jurisdictional (and thus not waivable)" its subsequent review after remand in *Gaskins v. Shiplevy*, 76 Ohio St.3d 380, 667 N.E.2d 1194 (1996) ("*Gaskin II*") held that the evidence of a waiver of these examination rights showed that there had

been full compliance with the bindover procedures, "thus signaling that the mandates of

the bindover statute were not jurisdictional after all." *May* at ¶ 25. The Court also

recognized a developing body of case law that finds that bindover proceedings can be

waived. "This all shows that a bindover procedure is 'proper' even when the juvenile

waives R.C. 2152.12's mandatory requirements. And if the requirements are waivable,

they are not jurisdictional." *May* at ¶ 26.

> Just last year, we validated *Gaskins II. See Johnson v. Sloan*, 154 Ohio
> St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 16-17. And in another recent
> case, we held that a juvenile may waive the right to an amenability hearing,
> which is central to any discretionary bindover procedure. *D.W.*, 133 Ohio
> St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 21. This all shows that a
> bindover procedure is "proper" even when the juvenile waives R.C.
> 2152.12's mandatory requirements. And if the requirements are waivable,
> they are not jurisdictional. *See Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196,
> at paragraph two of the syllabus ("The exclusive subject matter jurisdiction
> of the juvenile court cannot be waived"); *State v. Mbodji*, 129 Ohio St.3d
> 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 10 ("Because subject-matter
> jurisdiction involves a court's power to hear a case, the issue can never be
> waived or forfeited and may be raised at any time").
>
> While *Gaskins II* undermined *Gaskins I* by concluding that a juvenile may
> waive the bindover procedure's statutory mandates, other cases have
> undermined *Gaskins I* by concluding that a juvenile may forfeit them.
> In *Morgan*, we held that R.C. 2151.281(A)(1) requires a juvenile court to
> appoint a guardian ad litem at an amenability hearing when the juvenile's
> parents are deceased and there is no guardian or legal custodian. 153 Ohio
> St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, at ¶ 28. But we held that
> noncompliance with the statute is subject to plain-error review. *Id.* at ¶ 49.
> We also reviewed for plain error in *State v. Martin*, another case in which a
> bindover error had occurred. 154 Ohio St.3d 513, 2018-Ohio-3226, 116
> N.E.3d 127, ¶ 27. In these cases, we did not view an improper bindover
> procedure as a fundamental defect that prevented the juvenile court from
> transferring jurisdiction to an adult court. Indeed, in *Martin*, we
> distinguished *Wilson*, noting that the juvenile "was not deprived of R.C.
> 2152.12 bindover proceedings altogether." *Martin* at ¶ 25.

*May* at ¶ 26-27.

**{¶30}** The Court explained that while both jurisdictional and nonjurisdictional errors may be raised on direct appeal, categorizing an error as nonjurisdictional "would mean that a criminal offender may not collaterally attack a final judgment years after the fact." *May* at ¶ 31. Categorizing an error as jurisdictional would mean that it could be collaterally attacked via a habeas corpus petition many years later, even if the petitioner could have, but did not, raise the error on direct appeal.

**{¶31}** The Court rejected the petitioner's arguments that the notice provision in question was a prerequisite to the transfer of jurisdiction to an adult court and, therefore, a jurisdictional error. "No language in R.C. 2152.12(G) [the relevant notice provision] suggests that the provision of notice is a prerequisite to the transfer of jurisdiction to an adult court." It rejected the argument that by treating the notice provisions as waivable or subject to forfeiture it renders it nonmandatory and ineffective:

> But "not every requirement, even if mandatory, is jurisdictional in nature." *Pryor* at ¶ 15; *see also Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, at ¶ 27 ("R.C. 2152.021's mandates are not jurisdictional requirements"); *Gonzalez v. Thaler*, 565 U.S. 134, 146, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) ("calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored"); *Union Pacific RR. Co. v. Brotherhood of Locomotive Engineers & Trainmen Gen. Commt. of Adjustment, Cent. Region*, 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009), quoting *Arbaugh*, 546 U.S. at 510, 126 S.Ct. 1235, 163 L.E.2d 1097 ("Not all mandatory 'prescriptions, however emphatic,' " are properly classified as " 'jurisdictional' "). Holding that R.C. 2152.12(G) is nonjurisdictional would not mean that notice is nonmandatory. A juvenile still may object to noncompliance and, even absent an objection, may raise an issue of noncompliance on direct appeal following conviction. *See Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608. But it would mean that a criminal offender may not collaterally attack a final judgment years after the fact.

*May* at ¶ 31.

**{¶32}** The Court also rejected the argument that the notice provision's inclusion in the bindover statute makes it a prerequisite to transfer, particularly in view of the Court's decision to overrule *Gaskins I*:

> To be sure, this court has in some cases viewed R.C. 2152.12's mandatory requirements as prerequisites to the transfer of jurisdiction. But in view of our decision to overrule *Gaskins I*, Smith's argument has little force because he does not consider whether R.C. 2152.12(G), in particular, clearly establishes a barrier to the transfer of jurisdiction.

*Id.* at ¶ 32.

**{¶33}** Finally, the Court rejected the argument that the notice provision is a due-process protection and thus jurisdictional. It noted that a juvenile may waive constitutional rights and other key parts of bindover procedure, including amenability hearings:

> This argument misses an important fact. We have held that a juvenile may waive other key parts of the bindover procedure, such as an amenability hearing. *D.W.*, 133 Ohio St. 3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 21. In support of that holding, we explained that "[e]ven though '[t]here is a presumption against the waiver of constitutional rights,' an individual can still waive his constitutional rights as long as the waiver is made knowingly and intelligently and is an intentional relinquishment of a known right." *Id.* at ¶ 24, quoting *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). Smith has not shown why his waiver of R.C. 2152.12(G)'s protections—even if they are constitutional in character—was not permissible.

*Id.* at ¶ 33. The Court held that the error was not jurisdictional and the sentencing court did not lack subject-matter jurisdiction. *Id.* at ¶ 34.

**{¶34}** If an error in a bindover proceeding is nonjurisdictional, it can be waived by a voluntary guilty plea or forfeited by the failure to preserve it in the juvenile court proceedings. In *State v. Morgan,* 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, a juvenile delinquent was transferred to the adult court and pleaded guilty to burglary, felonious assault and aggravated robbery with firearm specifications. On appeal, he

challenged the juvenile court's failure to appoint a guardian ad litem at the amenability hearing even though he failed to raise the issue in the juvenile court. The Ohio Supreme Court held that the plain-error standard that courts apply in criminal proceedings should apply when errors that are not preserved arise in juvenile-delinquency proceedings. *Id.* at ¶ 49.

{¶35} In *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, the juvenile was bound over to adult court and entered a guilty plea to aggravated murder and felonious assault, with firearm specifications. On appeal, Martin contended that the juvenile court was required to apply Ohio's "safe harbor" law, which benefits certain human-trafficking victims and requires a guardian ad litem be appointed. Martin did not raise this issue or make an objection in the juvenile court. The appellate court found that Martin had forfeited the error. The Ohio Supreme Court held that the failure to appoint a guardian ad litem for the amenability hearing under the safe-harbor law was a non-jurisdictional issue and could be forfeited.

> In *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), this court held that unless proper bindover proceedings occur, the juvenile court has exclusive jurisdiction over cases concerning children alleged to be delinquent and that jurisdiction cannot be waived, *id.* at syllabus. But Martin was not deprived of R.C. 2152.12 bindover proceedings altogether, and she does not argue that the court's amenability ruling was erroneous. Rather, she argues that the juvenile court's failure to appoint a guardian ad litem and to consider and apply the safe-harbor law invalidated her transfer to adult court.

*Martin* at ¶ 25.

{¶36} Because the Court found that Martin had forfeited any safe-harbor error by failing to raise it in juvenile court, the Court did not address the question of whether Martin's guilty plea resulted in a waiver:

> [W]e hold that when there was no objection to a juvenile court's failure to consider the applicability of R.C. 2152.021(F), as in this case, the criminal plain-error standard applies. And here, Martin cannot carry her burden of demonstrating plain error. Because she cannot do so, we need not address whether her guilty plea in adult court waived her claim that the juvenile court erred in failing to consider R.C. 2152.021(F).

*Martin* at ¶ 2.

### B. The Errors Powell Raises Are Not Jurisdictional and Are Waived

**{¶37}** Powell raises five assignments of error and we must determine whether his guilty plea results in a waiver of these alleged errors. Based on *May* and relevant habeas corpus case law, we find that none of Powell's assignments of error raise jurisdictional challenges; he waived the errors when he pleaded guilty. Powell does not contest the validity of his guilty plea. He pled guilty to murder, which removed the issue of factual guilt from the case. He has waived all constitutional violations that occurred prior to the entry of the guilty plea. We find that none of the purported juvenile court errors created a jurisdictional defect that deprived the adult court of subject-matter jurisdiction.

### 1. Failure to Appoint an Investigator

**{¶38}** For his first assignment of error, Powell contends the juvenile court erred when it failed to appoint a criminal investigator to assist his attorneys with the probable cause hearing. "Deviation from a bindover procedure gives rise to a potentially valid habeas claim only if the applicable statute clearly makes the procedure a prerequisite to the transfer of jurisdiction to an adult court." *May*, at ¶ 29. Because habeas corpus claims raise *jurisdictional challenges*, a deviation from a bindover procedure gives rise to jurisdictional errors only if the applicable statute clearly makes the procedure a prerequisite to the transfer of jurisdiction to the adult court. However, not only is there no statutory requirement that an investigator be appointed to assist with the probable cause

hearing as a prerequisite to a transfer to adult court, there is no statutory requirement at all. Therefore, a failure to appoint an investigator cannot possibly be a barrier to the adult court obtaining jurisdiction. Because any error in the refusal to appoint an investigator is not jurisdictional, Powell waived this error when he pleaded guilty.

{¶39}  We overrule his first assignment of error.

### 2. Motion to Suppress

{¶40}  For his second assignment of error Powell contends that the juvenile court erred when it denied his motion to suppress statements made in violation of his *Miranda* rights. However, as we discussed above, probable cause hearings are non-adjudicatory – the Ohio Rules of Evidence and constitutional questions concerning admissibility are premature and are not addressed at this stage. There is no statutory requirement that the juvenile court hear and resolve a suppression motion at the probable cause hearing. Thus, a suppression hearing is not a statutory procedure that is a prerequisite to the transfer of jurisdiction to an adult court. Any error in denying the suppression motion is not jurisdictional and was waived when Powell entered his guilty plea.

{¶41}  We overrule his second assignment of error.

### 3. Errors in the Waiver Colloquy

{¶42}  For his third assignment of error Powell claims that his waiver of the amenability hearing was invalid because during the waiver colloquy, the juvenile court failed to explain the increased penalties to him before accepting his waiver.  He did not object to the colloquy in juvenile court or object to the juvenile court's findings in its transfer order. Powell is not claiming that he never waived the amenability hearing; he is

claiming that his waiver is invalid because the juvenile court's colloquy to determine the validity of the waiver was inadequate.

{¶43} In *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, there was no evidence in the record that the juvenile waived the amenability hearing. The Court held that "an amenability hearing under R.C. 2152.12(B)(3) may be waived provided (1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently." *Id.* at ¶ 47. The bindover proceedings require either that an amenability hearing be held or that the juvenile court conduct the two-step waiver process set forth in *D.W.*

{¶44} Here the juvenile court conducted the two-step waiver process, but Powell contends the waiver colloquy was inadequate, making his waiver invalid. However, as discussed in *May*, the fact that an amenability hearing or, alternatively, a waiver of it are mandatory, does not make them jurisdictional. *May* at ¶ 18. "[We have held that key parts of the bindover procedure may be waived * * *. These cases implicitly provide * * * that noncompliance with a statutory bindover requirement does not prevent a juvenile court from transferring its jurisdiction over a case and does not render an adult court's judgment void" *Id.* "And if the requirements are waivable, they are not jurisdictional." *Id.* at ¶ 26. Because the juvenile court conducted the waiver colloquy – even if we assume it was faulty – it could transfer the case to the adult court and the adult court had subject-matter jurisdiction. *May* at ¶ 37-38, 41 (Kennedy, J., concurring in judgment only, joined by DeWine, J.). Any error by the juvenile court in conducting the waiver colloquy was not

jurisdictional and made the judgment voidable, not void. "[W]hen a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void." *May* at ¶ 40 (Kennedy, J., concurring in judgment only, joined by DeWine, J.).

**{¶45}** As the *May* concurrence explained, the reason the adult court lacked jurisdiction in *State v. Wilson, supra,* was because the juvenile court never held any bindover proceedings and did not issue an order transferring the case to the adult court. As a result, the adult court never had jurisdiction. However, where the juvenile court holds bindover proceedings – albeit faulty ones – and issues an order transferring the case to the adult court, then the adult court does have subject-matter jurisdiction. The error is not jurisdictional and the court's judgment is only voidable, not void. *May* at ¶ 41-42 (Kennedy, J. concurring in judgment only, joined by DeWine, J.); *State v. Deems,* 10th Dist. No. 19AP857, 2020-Ohio-4076, ¶ 23 (interpreting *Smith v. May* and finding that a juvenile court's failure to order a physical examination as required by the former bindover statute was not a jurisdictional error and did not deprive the adult court of jurisdiction).

**{¶46}** Habeas corpus cases also support our determination that errors in an amenability-hearing waiver colloquy are not jurisdictional. A criminal offender cannot collaterally attack a final judgment many years later by raising challenges to the juvenile court's waiver colloquy. Errors in the waiver colloquy are not jurisdictional and must be brought on appeal, not as a habeas claim. For example, in *Smith v. Bradshaw*, petitioner argued that his criminal conviction was void and he was entitled to a writ of habeas corpus because his bindover procedure was improper on the grounds that: (1) he had not had a physical and mental examination and (2) "his waiver of the probable cause hearing had

been invalid." *Smith v. Bradshaw,* 109 Ohio St.3d 50, 2006-Ohio-1829, 845 N.E.2d 516, ¶ 7. The Court affirmed the dismissal of his habeas corpus petition because, "Smith had an adequate remedy at law by appeal to raise his claims." *Id.* at ¶ 11. The Court reasoned, "Smith cites no habeas corpus case involving waiver of a probable-cause determination in support of his claim of improper bindover. Instead, he relies predominately on cases resolved in the ordinary course of law on appeal rather than by extraordinary writ." *Id.* at ¶ 14. Smith could not challenge the validity of his waiver of the probable cause hearing via a habeas corpus petition, which means that an error in the waiver was not jurisdictional. Just as *Gaskin II* was "signaling that the mandates of the bindover statute were not jurisdictional after all," the decision in *Smith v. Bradshaw* signals that errors in a juvenile court's waiver colloquy are not jurisdictional. *May* at ¶ 25.

**{¶47}** The purported error in the juvenile court's amenability-hearing waiver colloquy is not jurisdictional. Powell waived it by pleading guilty.[1]

**{¶48}** We overrule his third assignment of error.

### 4. Ineffective Assistance of Counsel

**{¶49}** Powell's fourth assignment of error raises an ineffective assistance of counsel claim in which he claims that his attorneys needed an investigator to help them prepare for the probable cause hearing, they did not get one, and therefore they were unable to properly prepare for the probable cause hearing. He speculates that, if better prepared, his attorneys "could have called additional witnesses to refute the government's

---

[1] Because we find that Powell waived this error with his guilty plea, we need not determine whether he forfeited it by failing to object and, therefore, we need not conduct a plain-error review. *State v. Quarterman*, 140 Ohio St.3d 513, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (explaining the difference between waiver and forfeitures); *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, ¶ 2 (because Martin had forfeited the error but could not show plain-error, the Court did not need to determine if the error was waived by her guilty plea).

evidence." He argues that he was "not able to refute the government's evidence at probable cause, which caused the juvenile court to find probable cause." The record shows that: (1) Powell was appointed not one, but two experienced attorneys; (2) he was provided all the relevant discovery prior to the probable cause hearing; (3) he was granted several extensions of the hearing date so that his attorneys could fully review the discovery; (4) his attorneys did not seek any additional extensions of the hearing date; and (5) when the juvenile court asked if they were ready to proceed with the hearing, they responded affirmatively.

{¶50} In *Legg,* a juvenile defendant that had pleaded guilty in adult court challenged errors made in his juvenile bindover proceedings. We found that the appellant "who pleads guilty waives the right to claim ineffective assistance of counsel on appeal, except to the extent that counsel's deficient performance cause the plea to be less than knowing and voluntary." *Legg* at ¶ 61. However, due to the lack of guidance in the bindover case law, we reviewed the ineffective assistance claim anyway, "[a]ssuming, *arguendo*" that it was not waived. *Legg* at ¶ 61. In *Starling, supra,* a case decided prior to *May*, the appellate court found this type of claim only "indirectly" attacks the jurisdiction of the trial court. *Starling* at ¶ 23; *Bozsik v. Hudson*, 110 Ohio St.3d 245, 2006-Ohio-4356, 852 N.E.2d 1200, ¶ 7 ("Claims involving the ineffective assistance of counsel or the alleged denial of the right to counsel are not cognizable in habeas corpus."). Recently the Eleventh District Court of Appeals held that a claim of ineffective assistance of counsel arising from a bindover proceeding could not be raised via a habeas corpus petition because it could be raised on direct appeal or by a postconviction petition and thus,

implicitly, the error was not jurisdictional. *Washington v. Eppinger,* 11th Dist. No. 2020-T-0024, 2020-Ohio-3851, ¶ 46, 49.

{¶51} Powell's contention, which is unsupported by the record, is that his attorneys did not adequately prepare for the probable cause hearing, which resulted in a violation of his Sixth Amendment right to counsel. Powell does not contend that this alleged constitutional violation deprived the adult court of jurisdiction or invalidated his guilty plea. We find that his ineffective assistance of counsel claim, even if meritorious, was not a jurisdictional error and did not deprive the adult court of jurisdiction. Powell waived this claim with his guilty plea.

{¶52} We overrule Powell's fourth assignment of error.

5. Sufficiency of Evidence to Support Probable Cause Determination

{¶53} For his fifth assignment of error Powell contends that the juvenile court's probable cause finding was not supported by sufficient evidence because the state relied on hearsay and unauthenticated documents and did not adequately investigate other potential suspects.

{¶54} In *Legg,* appellant contended that the juvenile court's probable cause finding was not supported by the evidence. *Legg,* 2016-Ohio-801, ¶ 24. We recognized the need for further guidance from the Ohio Supreme Court on whether errors in the bindover procedure are jurisdictional. *Legg* at ¶ 30-31. We observed that several Ohio appellate courts have held that a defendant who pleads guilty in common pleas court may challenge on appeal a juvenile court's probable cause finding in support of the bindover. *Id.* at ¶ 30. We found it "arguable" that "a challenge to the sufficiency of probable cause evidence in a mandatory bindover proceeding" raised a jurisdictional error. However, "in

the absence of further guidance from the Ohio Supreme Court" we decided that his guilty plea did not result in a waiver:

> Thus, even though appellant entered a guilty plea, thereby completely admitting that he committed aggravated murder, we will consider his claim that the state did not present sufficient evidence to establish probable cause to believe he committed the acts charge in the delinquency complaints.

*Legg* at ¶ 31; *but see Agee v. Russell,* 92 Ohio St.3d 540, 2001-Ohio-1279, 751 N.E.2d 1043 (2001) (In response to Agee's challenge to his probable cause hearing, the Court found the error was not jurisdictional: "In the absence of a patent and unambiguous lack of jurisdiction, Agee had an adequate remedy at law by appeal to raise his claim concerning the allegedly improper bindover."); *Smith v. Bradshaw*, 109 Ohio St.3d 50, 2006-Ohio-1829, 845 N.E.2d 516 (alleged invalidity of waiver of probable cause hearing was not jurisdictional); *contra State v. E.T.,* 2019-Ohio-1204, 134 N.E.3d 741, ¶ 42-45 (10th Dist.) (a pre-*May* decision discussing whether appellant's claim that the state did not present sufficient evidence to establish probable cause was waived by the appellant's guilty plea in adult court and determining that a juvenile court's finding of probable cause in the face of insufficient evidence was a jurisdictional error and reviewed it).

{¶55} Like amenability hearings, probable cause hearings may be waived, or the juvenile may stipulate to probable cause. *State v. J.T.S.,* 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, ¶ 20. Because probable cause hearings are waivable, they are not jurisdictional. *May,* 2020-Ohio-61, at ¶ 26 (a bindover procedure is "proper" even when the juvenile waives a mandatory requirement, "And if the requirements are waivable, they are not jurisdictional."). Powell's claim that the state did not present sufficient evidence of probable cause does not raise a jurisdictional error. He waived it by his guilty plea and he

"quite validly" removed the issue of factual guilt from the case. *State v. Shafer*, 4th Dist. Adams No. 17CA1047, 2018-Ohio-214, ¶ 21.

**{¶56}** We overrule Powell's fifth assignment of error.

IV. CONCLUSION

**{¶57}** Powell waived all nonjurisdictional errors in his bindover proceeding when he pleaded guilty in the common pleas court, general division. He does not contest the validity of his guilty plea and none of Powell's assignments of error raise jurisdictional challenges. We find that he has waived the purported errors in the bindover proceeding and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the GALLIA COUNTY COURT OF COMMON PLEAS, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**