[Cite as *Behrens v. Behrens*, 2024-Ohio-1121.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| DANIEL BEHRENS, | CASE NO. 2023-L-081 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| BRITTANY BEHRENS, | |
| Defendant-Appellee. | Trial Court No. 2019 DR 000321 |

**O P I N I O N**

Decided: March 25, 2024
Judgment: Affirmed

*Leedaun C. Williams*, 6100 Oak Tree Boulevard, Suite 200, Independence, OH 44131, and *Jay F. Crook*, Jay F. Crook, Attorney at Law, LLC, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Plaintiff-Appellant).

*Amanda M. Pipik-Leip*, Taft, Stettinius & Hollister, LLP, 200 Public Square, Suite 3500, Cleveland, OH 44114 (For Defendant-Appellee).

EUGENE A. LUCCI, P.J.

{¶1}   Appellant, Daniel Behrens ("Father"), appeals the July 28, 2023 entry that adopted a magistrate's decision and entered judgment modifying the parties' shared parenting plan and finding Father in contempt for his failure to pay certain tutoring expenses.  We affirm.

{¶2}   Father and his former spouse, appellee, Brittany Behrens ("Mother"), are the parents of two minor children, born in 2014 and 2016.  In 2020, the parties were divorced by way of an agreed decree, which incorporated the parties' separation

agreement, including a shared parenting plan. On September 13, 2021, Father filed a motion to modify the shared parenting plan. On September 7, 2022, Mother filed a motion requesting the trial court to order Father to show cause as to why he should not be held in contempt for his failure to reimburse Mother for tutoring expenses she incurred on behalf of the parties' youngest child. Both motions were heard by a magistrate over the course of two days. On January 25, 2023, the magistrate issued a decision concluding that the shared parenting plan should be modified, that tutoring is an "educational expense" for which Father was obligated to pay a certain portion, and that Father should be held in contempt for his failure to pay for tutoring.

{¶3} On February 2, 2023, new counsel filed an appearance on behalf of Father, and, on February 6, 2023, Father moved for an extension of time to file objections. The trial court denied the motion for an extension on February 16, 2023. The next day, Father filed a motion for leave to file his preliminary objections instanter together with his preliminary objections and a request for leave to supplement his objections. On February 22, 2023, Father filed transcripts of the magistrate's hearing with the trial court. On February 24, 2023, Mother filed a response in opposition to Father's motion to file his objections instanter. On February 28, 2023, Father filed a reply in support of his motion to file his objections instanter and renewed his request for leave to supplement the objections.

{¶4} On July 28, 2023, the trial court denied Father's motion to file objections instanter. The same day, the trial court adopted the magistrate's decision, granted Father's motion to modify the parties' shared parenting plan, found Father in contempt for his failure to pay his portion of the parties' younger child's tutoring expenses, and ordered

2

that Father serve ten days in the Lake County Jail unless he purged himself of the contempt by paying Mother $609.59 on an ordered schedule.

{¶5} On appeal, Father assigns three errors. Prior to reaching the merits of Father's assigned errors, we first address an issue raised by Mother in her answer brief, wherein she maintains that Father's appellant's brief should be stricken and his appeal dismissed because he has failed to include record references in his brief in contravention of this court's Local Rule ("Loc.R.") 16(C)(4)(a) and 16(E). In his reply brief, Father maintains that no transcript citations were provided because he does not rely on the transcript in support of his assigned errors. Instead, he relies only on the documents identified in his arguments.

{¶6} Although Father does not rely on the transcript of the hearing before the magistrate in his brief, Loc.R. 16(C)(4)(a) requires an appellant to cite to the "portion of the record" wherein the trial court erred, and Loc.R. 16(E) provides that failure to comply with the rule may result in the brief being stricken and/or dismissal of the appeal. Further, App.R. 16(A)(3) and 16(A)(7) require an appellant's brief to contain "a statement of the assignments of error presented for review, *with reference to the place in the record where each error is reflected,*" and "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the* authorities, statutes, *and parts of the record on which appellant relies.*" (Emphasis added.) Nonetheless, given the limited nature of Father's arguments and the specific identification of those portions of the record at issue within the text of his arguments, any literal noncompliance with the rule is an insufficient basis in this case to strike the brief or dismiss the appeal.

3

{¶7} Accordingly, we proceed to review Father's assigned errors.

{¶8} In his first assigned error, Father maintains:

{¶9} "The trial court abused its discretion in not granting appellant's request for an exte[n]sion of time and then not considering out of rule filed objections."

{¶10} Initially, we briefly address a finality issue raised by Mother in her answer brief relative to Father's first assigned error. Mother maintains that Father cannot challenge the trial court's rulings on his motions for an extension and to file the objections instanter, as the trial court's rulings on these issues were not final orders. Although Mother is correct that these rulings were not final orders, they merged with the final order issued in this matter on July 28, 2023. *See Crowley v. Warren*, 11th Dist. Trumbull No. 2002-T-0177, 2003-Ohio-5692, ¶ 19; *see also Eckmeyer ex rel. Eckmeyer v. Kent City School Dist. Bd. of Edn.*, 11th Dist. Lake No. 99-P-0117, 2000 WL 1651308, *3-4 (Nov. 3, 2000). Thus, the interlocutory orders denying extension and leave to file objections to the magistrate's decision became subject to review when the trial court entered judgment on the magistrate's decision.

{¶11} We review a trial court's decision as to whether to grant an extension to file objections to a magistrate's decision for an abuse of discretion. *May v. Jarosz*, 11th Dist. Lake No. 2022-L-063, 2023-Ohio-511, ¶ 12. "An abuse of discretion may be found in a trial court's "'"failure to exercise sound, reasonable, and legal decision-making."'" *May* at ¶ 13, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "[W]here the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court

4

Case No. 2023-L-081

would have reached a different result is not enough, without more, to find error." *May* at ¶ 14, citing *Beechler* at ¶ 67.

**{¶12}** Civ.R. 53(D)(5) provides, "For good cause shown, the court shall allow a reasonable extension of time for a party to * * * file objections to a magistrate's decision. 'Good cause' includes, but is not limited to, a failure by the clerk to timely serve the party seeking the extension with the magistrate's order or decision." Thus, aside from the singular example of "good cause" contained in Civ.R. 53(D)(5), the rule does not define "good cause." "As a general rule, 'good cause' means a '"[s]ubstantial reason, one that affords legal excuse."'" *White v. Grange Ins. Co.*, 2d Dist. Montgomery No. 29151, 2022-Ohio-497, ¶ 28, quoting *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988), quoting *Black's Law Dictionary* 622 (5th Ed.1979). "The determination of what constitutes good cause can be made only on a case-by-case basis." *White* at ¶ 28, quoting *Brown* at 308.

**{¶13}** Prior to the adoption of Civ.R. 53(D)(5) in 2006, a motion for extension to file objections was governed by Civ.R. 6. *Hasch v. Hasch*, 11th Dist. Lake No. 2007-L-127, 2008-Ohio-1689, ¶ 26. "Under Civ.R.6(B), a trial court may grant an extension in its discretion after the time for doing an act has expired where the failure to act was the result of excusable neglect of the party or of his counsel." *Hasch* at ¶ 26. "The cases decided under that rule provide guidance as to the meaning of 'good cause' under Civ.R. 53(D)(5)." *Hasch* at ¶ 26. *See also White* at ¶ 28 (standards for good cause and excusable neglect are similar).

**{¶14}** "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be

5

mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 466, 650 N.E.2d 1343 (1995), citing *Marion Production Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 271, 533 N.E.2d 325 (1988). "Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ.R. 6(B)(2) is less stringent than that applied under Civ.R. 60(B)." (Citations omitted.) *State ex rel. Lindenschmidt* at 466.

{¶15} Here, the magistrate's hearing was held over two days in 2022, and both parties were represented by counsel. The magistrate issued a decision on January 25, 2023. On February 2, 2023, a notice of appearance was filed by a new attorney on behalf of Father. On February 6, 2023, Father, through new counsel, moved for a 30-day extension of time to file objections. Father maintained that it was "imperative that counsel obtain the audio recording and transcript of the hearing to determine and prepare Plaintiff's Objections to the Magistrate's Decision because counsel was not present at the hearing." In support of new counsel's need to review the transcript prior to filing objections, Father cited to the trial court's local rules which require objections to "**be specific and state with particularity the grounds for the objection**." (Emphasis sic.) Lake County Domestic Relations Court Local Rule 12.04. *See also* Civ.R. 53(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.").

{¶16} On February 16, 2023, the trial court denied Father's motion for an extension, reasoning that Father could have filed his objections prior to the preparation of the transcript and then sought leave to supplement the objections. The next day,

6

Father moved for leave to file his preliminary objections instanter, together with the preliminary objections, and a motion for an extension of time to file supplemental objections. In his motion for leave to file preliminary objections, Father cited another trial court case wherein he maintained that the court granted the objecting party a 30-day extension to file objections when the extension was requested within the 14-day objection period. Further, Father again argued that it was not possible for his attorney to prepare objections that complied with Lake County Domestic Relations Court Local Rule 12.04 without review of the transcript. *See also* Civ.R. 53(D)(3)(b)(ii). However, because the court had denied his motion for an extension, Father stated that he was submitting preliminary objections without the benefit of the transcript.

{¶17} Thereafter, Mother filed a response in opposition to Father's motion, maintaining that Father was not required to file a transcript simultaneously with his objections pursuant to Civ.R. 53. On February 28, 2023, Father filed a reply to Mother's response and a renewed motion for leave to supplement his objections to the magistrate's decision. In his reply, Father maintained that he required the transcript prior to the filing of objections to allow his newly retained counsel to ascertain what had occurred during the two-day hearing in this matter, not because of any misapprehension that he was required to file the transcript contemporaneously with the objections. On July 28, 2023, shortly prior to issuing the order on appeal, the trial court issued a judgment entry denying Father's February 17, 2023 motion for leave to file the objections instanter.

{¶18} On appeal, in support of his argument that the trial court should have permitted him an extension to file objections, Father relies on this court's decision in *Linville v. Kratochvill*, 11th Dist. Geauga No. 2013-G-3161, 2014-Ohio-1153. In *Linville*,

7

the trial court denied a defendant's motion for leave to file an answer and counterclaim instanter and granted the plaintiff's motion for default judgment. *Id.* at ¶ 8, 10. In that case, the request to file the answer and counterclaim instanter was made one-week after the answer was due by counsel who had just recently been retained. *Id.* at ¶ 20. This court concluded that *Linville* was "not a case where there was a significant delay, such that neglect or unresponsiveness is manifested, which would support a trial court's conclusion that leave should not be granted." *Id.* at ¶ 21, citing *Colley v. Bazell,* 64 Ohio St.2d 243, 248, 416 N.E.2d 605 (1980). "Such a short delay in filing an answer does not warrant granting default judgment and disregards the mandate that cases should be resolved on their merits." *Linville* at ¶ 21, citing *Maggard v. Ohio Dept. of Commerce,* 11th Dist. Lake No. 2002-L-042, 2003-Ohio-4098, ¶ 18 ("courts must be mindful of the admonition that cases should be decided on their merits when possible, instead of on procedural grounds").

{¶19} However, the present case is distinguishable from *Linville*. This case does not involve default judgment. The case was heard over two days by a magistrate, and both parties were represented by counsel. Father retained counsel of his choosing, and counsel's actions are imputed to him. *See GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 152, 351 N.E.2d 113 (1976), quoting *Link v. Wabash RR. Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("'Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.'"). It was Father's choice to replace his counsel after the magistrate issued a decision. Although Father contends that he premised his decision on his prior attorney's failure to properly file a

8

closing argument as directed by the magistrate, Father's decision to replace counsel created the situation that gave rise to his requests for an extension and for leave. Although this court may have ruled differently, we cannot say that the trial court abused its discretion in denying the motions for an extension and for leave to file the objections instanter.

{¶20} Father further maintains that the trial court's decision to deny an extension in this case was arbitrary because the same court reached a different result in *Lanza v. Lanza*, Lake County Court of Common Pleas, Division of Domestic Relations, Case No. 16 DR 000595, which Father asserts "is factually and procedurally squarely on point with the issue at hand." Father indicates that, in *Lanza*, a magistrate's decision was issued on February 11, 2022, and, on February 28, 2022, the trial court granted the *Lanza* defendant's motion for a 30-day extension to file objections.

{¶21} However, we do not have the *Lanza* case before us. Moreover, there is no indication in Father's brief that the *Lanza* defendant requested an extension due to a change in counsel during the objection period. The trial court is not obliged to grant an extension in every case where it is requested within 14 days of the magistrate's decision. Instead, as set forth above, the court's "determination of what constitutes good cause can be made only on a case-by-case basis." *White*, 2022-Ohio-497, at ¶ 28, citing *Brown*, 38 Ohio St.3d at 308.

{¶22} Accordingly, Father's first assigned error lacks merit.

{¶23} In his second and third assigned errors, Father contends:

> [2.] It was plain error for the magistrate to interp[r]et language of the divorce decree and all incorporated exhibits to find that private tutoring qual[i]fied as a[n] "education expense."

9

[3.] The magistrate committed plain error in finding that appellant was in contempt for failing to pay private tutoring expenses.

{¶24} In his second and third assigned errors, Father maintains that the magistrate committed plain error in (1) determining that the provision in the parties' separation agreement dividing their children's educational expenses between them included tutoring costs incurred due to Mother's unilateral decision to employ a private tutor and (2) finding Father in contempt for his failure to pay his share of the tutoring costs.

{¶25} First, we note that appellate courts generally do not directly review a magistrate's actions. Instead, we review the actions of the trial court relative to the magistrate's decision. *See Spurlock v. Pemberton*, 4th Dist. Lawrence No. 13CA1, 2013-Ohio-4002, ¶ 10; *see also Stevens v. Stevens*, 9th Dist. Medina No. 17CA0084-M, 2019-Ohio-264, ¶ 17, citing *Lathan v. Andrews*, 9th Dist. Summit No. 28382, 2017-Ohio-4419, ¶ 14 ("[T]his Court has held that claims of error on appeal must be based on the actions of the trial court.").

{¶26} Next, as set forth above, Father did not file timely objections to the magistrate's decision, and we concluded in our discussion of Father's first assigned error that the trial court did not abuse its discretion in denying Father's motions for extension and leave to file the objections. Accordingly, Civ.R. 53(D)(3)(b)(iv) applies, which provides, "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

10

{¶27} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." (Citations omitted.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. "[R]eviewing courts applying civil plain-error review 'must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice.'" *State v. Morgan,* 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 41, quoting *Goldfuss* at 121.

{¶28} Here, Father challenges as plain error the court's finding that he was in contempt for failure to pay a share of the younger child's tutoring expenses. Father maintains this finding resulted from the trial court's plain error of interpreting the parties' separation agreement to include tutoring expenses as education expenses, the costs of which were allocated proportionately between the parties regardless of whether they agreed to incur the expense. The magistrate's decision summarized Father's testimony on this issue as follows:

> With respect to mother's Motion to Show Cause, father testified that mother contacted him during the last school year to tell him that [their younger child] needed tutoring. She advised father that she had arranged for [the child] to be tutored by [the parties' older child's] former teacher at Hershey Montessori. Father reached out to [the younger child's] first grade teacher at Kirtland Elementary School, who advised him that in her opinion, tutoring for [the child] should start during the summer months. The teacher advised father that tutoring for [the child] was available through his school's Title 1 program at no cost to the parents. [The youngest child] was a participant in the Title 1 program as a result of his academic

11

struggles. Although father advised mother he preferred to follow the recommendations of [the child's] teacher, mother started [the child] in private tutoring in late February with [the older child's] former teacher, Jayne, against father's wishes.

[The younger child] attends tutoring twice a week. Father complained that mother has not provided him with the tutor's contact information and he has had no communication with the tutor regarding [the child's] progress. On cross-examination, father admitted he had made no attempt to obtain the tutor's contact information. Father acknowledged that he has seen an improvement in [the child's] school work and test scores since he started working with the tutor.

Mother uploaded [the child's] tutoring expense into Our Family Wizard for the time period from February 2022 through September 2022. Father testified that he believes the amount Jayne is charging for tutoring is reasonable and in line with the expense of other tutors. However, he has not reimbursed mother for any of the tutoring expense because the shared parenting plan requires him to reimburse only for agreed-upon activities. While he has no problem with Jayne doing the tutoring, he does object to mother enrolling [the child] in tutoring without his consent.

{¶29} The magistrate's decision summarized Mother's testimony on this issue as follows:

With respect to the dispute over [the younger child's] tutoring, mother testified that the parties' eldest child * * * struggled at Montessori when he was four years old. He worked with Jayne at that time, and it helped him. Father was aware at the time that Jayne was helping [the older child]. Jayne recently retired from the Montessori school but continues to tutor. Mother became aware that [the younger child] was struggling when he was screened for Kindergarten at Kirtland Elementary school. She testified that [the younger child was] "at the bottom of the barrel" when he was screened. [The younger child] was enrolled in Title 1 in September of 2020. The Title 1 program at Kirtland Elementary was a once per week pull out program, and [the child] received one-on-one tutoring for thirty minutes a week. Mother testified that [the child] did not receive enough help from the Title 1 program, and she felt he needed additional help. Father told her he wanted to wait and use the program offered by the school, but

12

Case No. 2023-L-081

never provided her with any additional information. She did not follow up with the school about the Title 1 program. Mother arranged for [the child] to receive tutoring from Jayne twice a week, on Mondays and Thursdays during her parenting time. The cost of tutoring with Jayne is very reasonable. She charges $30 per session, and $35 per session when she comes to mother's home. That happens occasionally when mother has to work late. Mother has uploaded the tutoring fees to Our Family Wizard. Father has never reimbursed her. [The child] no longer qualifies for Title 1 services. His grades have improved since he started receiving tutoring. He is more confident and is learning how to work through issues instead of getting frustrated and giving up. Jayne and [the child] have developed a rapport.

{¶30} Thereafter, in the decision's combined "findings of fact and conclusions of law," the magistrate stated:

> Both parties testified that [the younger child] was struggling in school and qualified for Title 1 services based upon poor academic performance. Father did not disagree that [the child] needed tutoring. He testified that he reached out to [the child's] teacher, who felt tutoring could wait until summer. Father objected to mother making arrangements for [the child] to receive tutoring from Jayne without his consent, and he was not provided with contact information for her. He admitted he has never asked for the tutor's contact information. He agreed the cost of the tutor is reasonable. Mother testified that [the child] was receiving Title 1 services at school for thirty minutes per week but continued to struggle. Mother enrolled [the child] in tutoring in February of 2022 without father's agreement. [The child's] tutoring is scheduled on Mondays and Thursdays, during mother's parenting time. Since commencing tutoring, [the child's] academic performance has measurably improved, and as a result he is no longer eligible for Title 1 services.
>
> Father argues he is not responsible for any portion of [the child's] tutoring expenses because mother enrolled [the child] in tutoring without his agreement. The parties' separation agreement reads, in pertinent part, as follows:
>
> "C. CHILDREN'S ACTIVITY EXPENSES

13

Case No. 2023-L-081

> The parents shall share the cost of education expenses for the children and any mutually agreed upon extracurricular or enrichment activity for the children, including the cost of all necessary clothing and equipment in accordance with Line 17 of the attached Ohio Child Support Computation Worksheet (*Exhibit C*)."
>
> The Magistrate finds that academic tutoring is an educational expense, not an extracurricular or enrichment activity. The Magistrate further finds the plain language of the separation agreement provides that the parties will share the cost of the children's education expenses. The Magistrate further finds there is no order requiring agreement with respect to educational expenses. [The child's] academic performance has improved significantly since tutoring commenced, and the tutoring is in [the child's] best interest.

(Underlining and italicizing sic.) The magistrate then found Father in contempt for his failure to pay his share of the child's tutoring expenses.

{¶31} As noted above, the trial court adopted the magistrate's decision and determined that Father was in contempt of the divorce decree for his failure to pay his share of their younger child's tutoring expenses incurred between February 28, 2022 and September 1, 2022, in the sum of $609.59.

{¶32} On appeal, Father maintains that the magistrate failed to consider the meaning of "education expenses" when read in the context of the entire separation agreement and shared parenting plan, particularly the subsection in the separation agreement pertaining to the "children's activity expenses" and the subsection in the shared parenting plan pertaining to "extracurricular activities." Father also relies on a dictionary definition of "extracurricular" as meaning "'not falling within the scope of a regular curriculum.'" Father argues that the plain meaning of the terms of the separation agreement and shared parenting plan provide that tutoring expenses are extracurricular

14

Case No. 2023-L-081

expenses, not education expenses, and the cost for tutoring should have been allocated to mother because the parties did not mutually agree on the private tutoring.

{¶33} However, as set forth above, we generally review the trial court's actions, not the magistrate's actions, on appeal. When no timely objections are filed, the trial court may adopt a magistrate's decision unless there is an "error of law or other defect *evident on the face of the magistrate's decision*." (Emphasis added.) Civ.R. 53(D)(4)(c). Father's argument as to the interpretation of the separation agreement and shared parenting plan would have required the trial court to look beyond the face of the magistrate's decision. *See Abdulshafi v. Abdulshafi*, 2020-Ohio-2692, 154 N.E.3d 338, ¶ 18 (10th Dist.) (the lack of objections limited the scope of the trial court's required review of the magistrate's decision). Moreover, assuming that this court may review the magistrate's interpretation of the decree and its attachments for plain error, and further assuming that the magistrate did error in interpreting the decree, we cannot say this is the extremely rare case where exceptional circumstances require application of the plain error doctrine to prevent a manifest miscarriage of justice. Accordingly, Father's second assigned error lacks merit.

Case No. 2023-L-081

**{¶34}** In his third assigned error, Father maintains that, based upon his argument contained in his second assigned error, the finding of contempt for his failure to pay a share of the tutoring expenses must be reversed because he "cannot be held in contempt for violating an incorrect and legally unnecessary interpretation of the Agreement that modifies the terms of the Agreement." However, as we did not find plain error with respect to the second assigned error, Father's third assigned error likewise lacks merit.

**{¶35}** The judgment is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.